LIBERTY BANK, Plaintiff-Appellee, Cross-Appellant, *v.*
HONOLULU PROVIDORING, INC., THOMAS A.
GRIFFITHS and J. BETTY GRIFFITHS, aka Jeanette B.
Griffiths, Defendants-Appellants, Cross-Appellees

NO. 7657

(CIVIL NO. 52994)

SEPTEMBER 14, 1982

RICHARDSON, C.J., LUM, NAKAMURA,
PADGETT, HAYASHI, JJ.

## OPINION OF THE COURT BY LUM, J.

The salient issue in this appeal is whether the trial court erred in concluding as a matter of law that a public auction of collateral to satisfy an unpaid loan was held in a commercially reasonable manner under HRS § 490:9-504 of the Uniform Commercial Code. Finding an affirmative answer on the basis of the very language of the security agreement, we reverse the lower court's decision and remand the case for execution of the appropriate remedy.

### I.

Defendant-appellant Honolulu Providoring, Inc. ("Providoring") entered into a note and security agreement with plaintiff-appellee Liberty Bank on January 21, 1975. The note and security agreement refinanced three previous loans between the two parties. Additional funds advanced to Providoring on the new security agreement totalled $28,976.64 in principal and interest. The note and security agreement described the collateral which secured the debt by reference to "UCC 1," a financing statement listing approximately fifty items of equipment owned by Providoring, recorded in conjunction with an August 1974 note and security agreement executed between the same parties. Defendants-appellants Thomas and Jeanette Griffiths, owners of Providoring, signed the January 1975 note and security agreement as indorsers and payment guarantors in accordance with a continuing guaranty made on October 29, 1974, in which the Griffiths agreed to guarantee all future loans extended by Liberty Bank to Providoring.

Providoring was delinquent on its payments on the January 1975 loan over the next two years. By letter dated March 4, 1977, Liberty Bank demanded the entire unpaid balance of $10,200.00 within five days. When appellants failed to comply, Liberty Bank officials took a physical inventory of Providoring's equipment.

In a letter dated March 22, 1977, Liberty Bank notified the Griffiths that the equipment securing the loan would be auctioned to cover the remaining balance and expenses. The Griffiths were further advised that "[a]lthough the exact date of the auction has not yet been determined, it is estimated that it will be held within two weeks. In any case you will be notified by Liberty Bank." Thomas Griffiths signed the letter to indicate his approval and acceptance of its contents as requested by Liberty Bank, but Jeanette Griffiths did not.

In a letter dated April 12, 1977 and postmarked April 14, 1977, Liberty Bank informed the Griffiths that the auction of the equipment was to be held on April 16, 1977. The auction was held as scheduled without prior judicial approval or approval by a creditor's committee or representative.[1]

On November 3, 1977, Liberty Bank instituted an action against Providoring and the Griffiths for a deficiency judgment of approximately $20,000.00 due on the January 1975 note and security agreement. Providoring and the Griffiths filed a counterclaim alleging, *inter alia,* that Liberty Bank had fraudulently and materially altered the August 1974 note and security agreement to include additional security and that the auction did not comply with the provisions of the Uniform Commercial Code. A non-jury trial was held and the lower court entered judgment against Providoring and the Griffiths for $17,576.00.

Providoring and the Griffiths filed an appeal from the judgment against them, alleging that the trial court had made numerous errors in its findings of fact and conclusions of law. Appellants' principal

---

[1] Prior approval by judicial proceeding, a creditors' committee or a creditors' representative is not required under the Uniform Commercial Code. But if such approval had been obtained, the disposition would be deemed to have been commercially reasonable. HRS § 490:9-507(2) (1976).

contentions on appeal, *inter alia,* were that the trial court erred in finding that there was credible evidence that the auction was conducted in a commercially reasonable manner, in failing to admit exhibits which they claim would prove that the August 1974 note and security agreement was materially altered, and in dismissing their counterclaim regarding the ownership of a particular machine.

Liberty Bank filed a cross-appeal contending that the trial court erred in several of its pretrial orders such as dismissing Liberty Bank's motion for imposition of sanctions against Providoring and the Griffiths for their failure to comply with discovery matters, refusing to grant Liberty Bank's motion to dismiss Counts I, II, and IV of their counterclaim, and setting aside its dismissal of Counts III and V of their counterclaim.

## II.

Appellants' most meritorious contention on appeal is that the auction held by Liberty Bank was commercially unreasonable because Liberty Bank failed to provide them with proper notice.

HRS § 490:9-504(3) (Supp. 1981) allows a secured creditor to dispose of the debtor's collateral upon default of the debtor, but requires that any disposition be "commercially reasonable" and that reasonable notification of any disposition be given to the debtor and other secured parties. The provisions of HRS § 490:9-504(3) are in relevant part as follows:

> Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but *every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale* or reasonable notification of the time after which any private sale or other intended disposition is to be made *shall be sent by the secured party to the debtor,* if he has not signed after default a statement renouncing or modifying his right to notification of sale. (Emphasis added.)

The requirements of commercial reasonableness and notification are fundamental rights of the debtor and may not be varied or

waived. However, the parties are allowed, under HRS § 490:9-501(3)(b), to determine by agreement the appropriate standards that will fulfill these requirements as long as the standards are not manifestly unreasonable.[2]

The parties herein made such an agreement establishing the time for reasonable notification of the disposition of the collateral. Paragraph 13 of the January 1975 note and security agreement provides as follows:

13. NOTICE TO BORROWER. Whenever notice is required, including notice of the time and place of any public sale or other disposition of the collateral is to be made, reasonable notice shall be deemed to be five days. Notice to Borrower shall be deemed to have been given upon the mailing thereof, postage prepaid, to the Borrower's address as it appears with Borrower's signature herein or to such other address as Borrower shall have furnished to Bank in writing or to Borrower's last address known to Bank.

Although the notice requirement in the note and security agreement expressly refers only to "Notice to Borrower," it has been generally recognized that the guarantor is also entitled to notice of the disposition of the collateral and is considered to be a borrower or debtor for purposes of UCC § 9-504(3). *Hepworth v. Orlando Bank & Trust Co.,* 323 So.2d 41 (Fla. App. 1975); *Commercial Discount Corp. v. Bayer,* 57 Ill.App.3d 295, 372 N.E.2d 926 (1978); *Chase Manhattan Bank, N.A. v. Natarelli,* 93 Misc.2d 78, 401 N.Y.S.2d 404 (1977); *State Bank of Burleigh County Trust Co. v. All-American Sub, Inc.,* 289 N.W.2d 772 (N.D. 1980). Both Providoring as the debtor and the Griffiths as

---

[2] HRS § 490:9-501(3)(b) (Supp. 1981) provides that

(3) To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the subsections referred to below may not be waived or varied except as provided with respect to compulsory disposition of collateral (subsection (3) of section 490:9-504 and section 490:9-505) and with respect to redemption of collateral (section 490:9-506) but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable:

. . . .

(b) Subsection (3) of section 490:9-504 and subsection (1) of section 490:9-505 which deal with disposition of collateral . . . .

the guarantors were therefore entitled to a five-day notice of the time and place of the auction of Providoring's equipment.

Liberty Bank did not provide the five-day notice as required in the note and security agreement. A letter informing Mr. Griffiths of the time and place of the April 16, 1977 auction was postmarked April 14, 1977, only two days before the sale of Providoring's equipment.

Liberty Bank seeks to excuse its failure to comply with the five-day notice requirement on the grounds that Providoring and the Griffiths were informed by letter dated March 23, 1977 that an auction would be held within two weeks. The March 23, 1977 letter, however, was indefinite as to the exact time, date, and place of the auction, and therefore does not constitute sufficient notice as required by Paragraph 13 of the note and security agreement.

Neither the March 23, 1977 letter nor the letter postmarked April 14, 1977 complied with the standards for reasonable notice as set forth in the 1975 note and security agreement. This Court thus need not determine whether the notice given was reasonable under the general statutory provisions of the Uniform Commercial Code. By the very terms of the note and security agreement, Liberty Bank failed to provide sufficient notice of the auction within a reasonable time to Providoring and the Griffiths.

III.

The 1975 note and security agreement did not provide any remedies in the event the parties failed to comply with its provisions. In the absence of any agreement by the parties, the remedy for Liberty Bank's failure to comply with the notification requirement should be supplied by the relevant provisions of Article 9 of the Uniform Commercial Code, as required by HRS § 490:9-501(2) (1976) which provides that "[a]fter default, the debtor has the rights and remedies provided in this Part, those provided in the security agreement and those provided in section 490:9-207." However, there is no uniform agreement among the courts as to the appropriate remedy to be accorded the debtor under the Code provisions.

The relevant section of the Uniform Commercial Code dealing with a secured party's liability for failure to comply with Code requirements is HRS § 490:9-507(1) (1976), which provides in part

as follows:

>(1) If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. *If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part.* If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time differential plus ten per cent of the cash price.[3] (Emphasis added.)

Only a minority of jurisdictions have held that UCC § 9-507(1) is the exclusive remedy of the debtor for the secured party's failure to comply with the Code's requirements of commercial reasonableness and proper notification. Under this minority view, the secured creditor is still entitled to a deficiency judgment and the debtor carries the burden of proving any damages sustained from the secured party's failure to comply with Code requirements. The debtor is only entitled to a set-off of his losses which, under normal contract damages, equals the difference between the actual resale price of the collateral and the probable price the collateral would have commanded if the secured party had strictly complied with statutory requirements. *See Chapman v. Field,* 124 Ariz. 100, 602 P.2d 481 (1979); *Commercial Credit Corp. v. Wollgast,* 11 Wash. App. 117, 521 P.2d 1191 (1974). *But see United States v. Cawley,* 464 F. Supp. 189 (E.D. Wash. 1979) (predicts that if Washington's highest court were to confront this issue, the court would choose a more liberal "rebuttable presumption" theory).

The minority view that UCC § 9-507(1) is the debtor's exclusive remedy for a secured creditor's misbehavior has been generally criticized. Most states interpret UCC § 9-507(1) as supplemental to remedies otherwise accorded to the debtor. In support of this argu-

---

[3] The collateral involved here was equipment used primarily for business. *See* HRS § 490:9-109(1), (2) (1976) (definitions of "consumer goods" and "equipment"). The last sentence of HRS § 490:9-507(1) pertaining to "consumer goods" therefore does not apply to the instant case.

ment, these jurisdictions note that UCC § 1-103 provides that other rules of law are controlling unless displaced by Code provisions.[4] The majority of courts reason that the drafters of the Code must have been aware of the existing remedies available to the injured debtor under prevailing commercial law and therefore the absence of language in UCC § 9-507(1) making its provisions explicitly exclusive implies that UCC § 9-507(1) was not intended to supersede supplemental remedies under general principles of law and equity. *See Wilmington Trust Co. v. Conner,* 415 A.2d 773 (Del. 1980); *Camden National Bank v. St. Clair,* 309 A.2d 329 (Me. 1973).

Although there is general agreement that an injured debtor is not limited only to his remedy for actual damages under UCC § 9-507(1) in the event the secured creditor fails to comply with Code provisions, there is sharp disagreement among jurisdictions as to the proper remedy to be accorded the debtor with respect to the secured creditor's right to a deficiency judgment.

One group of jurisdictions holds that the secured creditor's failure to comply with notification and commercial reasonableness requirements absolutely bars the secured creditor from obtaining any deficiency judgment. Since the secured creditor's failure to comply with Code requirements substantially prejudices the debtor's right to redeem the collateral or insure that a sufficient price is obtained on resale, these jurisdictions require strict compliance with statutory requirements as a condition precedent to the secured party's right to a deficiency judgment. According to these jurisdictions, an absolute forfeiture of the right to a deficiency judgment is the only sufficient deterrent to a secured creditor's misbehavior. *Atlas Thrift Co. v. Horan,* 27 Cal.App.3d 999, 104 Cal. Rptr. 315 (1972); *Randolph v. Franklin Investment Co.,* 398 A.2d 340 (D. C. Ct. App. 1979); *Wilmington Trust Co. v. Conner, supra; Turk v. St. Petersburg Bank & Trust Co.,* 281 So.2d 534 (Fla. App. 1973); *Gurwitch v. Luxurest Furniture Manufacturing Co.,* 233 Ga. 934, 214 S.E.2d 373

---

[4] HRS § 490:1-103 (1976) states as follows:

*Supplementary general principles of law applicable.* Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

(1975); *Stensel v. Stensel,* 63 Ill.App.3d 639, 380 N.E.2d 526 (1978); *Herman Ford-Mercury, Inc. v. Betts,* 251 N.W.2d 492 (Iowa 1977); *Camden National Bank v. St. Clair, supra; DeLay First Nat'l Bank & Trust Co. v. Jacobson Appliance Co.,* 196 Neb. 398, 243 N.W.2d 745 (1976); *Vic Hansen & Sons, Inc. v. Crowley,* 57 Wis.2d 106, 203 N.W.2d 728 (1973); *Aimonetto v. Keepes,* 501 P.2d 1017 (Wyo. 1972).

The other group of jurisdictions places the burden on the creditor to rebut the presumption that the value received for the collateral at resale equals the balance due on the outstanding debt. Where the sale was not held in accordance with proper notice and disposition requirements, the secured creditor also has the burden of proving that the market value of the collateral is less than the indebtedness, by evidence other than the resale price. These jurisdictions are of the view that the rule barring the secured creditor from any deficiency judgment is unduly harsh and punitive. In effect, the secured creditor is permitted in these jurisdictions to seek a deficiency judgment from the debtor despite his failure to comply with notice and commercial reasonableness requirements as long as he meets his burden of proof. *Valley Mining Corp., Inc. v. Metro Bank,* 383 So.2d 158 (Ala. 1980); *Kobuk Engineering & Contracting Services, Inc. v. Superior Tank & Construction Co-Alaska, Inc.,* 568 P.2d 1007 (Alaska 1977); *Universal C.I.T. Credit Co. v. Rone,* 248 Ark. 665, 453 S.W.2d 37 (1970); *Community Management Ass'n of Colorado Springs, Inc. v. Tousley,* 32 Colo. App. 33, 505 P.2d 1314 (1973); *Savings Bank of New Britain v. Booze,* 34 Conn. Supp. 632, 382 A.2d 226 (1977); *Hall v. Owen County State Bank,* 370 N.E.2d 918 (Ind. App. 1977); *Westgate State Bank v. Clark,* 231 Kan. 81, 642 P.2d 961 (1982); *Levers v. Rio King Land & Investment Co.,* 93 Nev. 95, 560 P.2d 917 (1977); *Conti Causeway Ford v. Jarossy,* 114 N.J. Super. 382, 276 A.2d 402 (1971), *aff'd,* 118 N.J. Super. 521, 288 A.2d 872 (1972); *Clark Leasing Corp. v. White Sands Forest Products, Inc.,* 87 N.M. 451, 535 P.2d 1077 (1975); *Hodges v. Norton,* 29 N.C. App. 193, 223 S.E.2d 848 (1976); *Associates Capital Services v. Riccardi,* 408 A.2d 930 (R.I. 1979).

This issue is one of first impression in this jurisdiction. Upon review of the above cases, we have decided that the better view is the "rebuttable presumption" theory which shifts the burden to the secured creditor of proving that the amount due on the debt is greater than the value of the collateral. This "rebuttable presump-

tion" rule affords some protection to the debtor on a case-by-case basis without being unduly punitive. The automatic forfeiture of the right to a deficiency judgment, without an examination of the circumstances of a particular case, is contrary to the policies of the Code, which discourages the assessment of penal damages.[5] Especially since the injured debtor still has the supplemental remedy provided by UCC § 9-507(1) for damages sustained, further penalizing the secured creditor by barring a deficiency judgment is not warranted, unless the creditor fails to carry his burden of proof. *See Westgate State Bank v. Clark, supra; Hall v. Owen County State Bank, supra. See also* Rosner, *A Creditor's Right to a Deficiency Judgment under Article 9 of the Uniform Commercial Code: Effect of Lack of Notice,* 42 Brooklyn L. Rev. 56 (1975).

We therefore adopt the "rebuttable presumption" rule in this jurisdiction. If the secured creditor fails to comply with notification requirements or disposes of a collateral other than in a commercially reasonable manner, the secured creditor will have the burden of rebutting the presumption that the fair market value of the collateral equals the unpaid balance of the outstanding debt. In proving the fair market value of the collateral, the secured creditor who fails to comply with the requirements of the Code may not rely solely on the value received on resale, but must prove the value of the collateral by other evidence. Moreover, to the extent that the debtor is harmed by the secured creditor's failure to comply with proper notification and commercial reasonableness requirements, the debtor will be entitled under HRS § 490:9-507(1) to have the amount of damages sustained set-off against any deficiency the secured creditor would otherwise recover.

In accordance with our holding that Liberty Bank failed to comply with the notice requirement of the security agreement, this case is reversed and remanded to the trial court to determine whether Liberty Bank is able to rebut the presumption that the value

---

[5] *See* HRS § 490:1-106(1) (1976), which provides:
(1) The remedies provided by this chapter shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed *but neither consequential or special nor penal damages may be had* except as specifically provided in this chapter or by other rule of law. (Emphasis added.)

of the collateral was equal to the unpaid balance due on the debt. The remaining issues raised by the parties on appeal and cross-appeal are dismissed as having no merit.

Reversed in part and remanded for further proceedings consistent herewith.

*Philip D. Bogetto (Michael A. Weight* with him on the briefs) for defendants-appellants, cross-appelles.

*Neil F. Hubert (Hong* and *Iwai* of counsel) for plaintiff-appellee, cross-appellant.