OPINION OF THE COURT
D. Bruce Crew, III, J.
Plaintiff, First Bank & Trust Company of Ithaca, New York, moves for summary judgment on its complaint seeking to foreclose a mortgage given to it by defendants, Jack L. Mitchell and Sylvia I. Mitchell (hereinafter the Mitch-ells), and seeking an adjudication of the liability of these defendants and the defendant, Mitchell’s Kawasaki & Power Equipment, Inc. (hereinafter Kawasaki), for any deficiency that may remain on these defendants’ obligations after the application of the proceeds of the foreclosure sale. Additionally, plaintiff seeks an order dismissing the counterclaims of each defendant. The defendants cross-move for summary judgment and for dismissal of plaintiff’s complaint.
Plaintiff loaned $95,000 to Kawasaki in October, 1978. To secure the loan the corporation executed and delivered to plaintiff two security agreements, one of which covered all equipment and inventory. The Mitchells signed a guarantee of the corporate loan and gave a mortgage as further security for the loan. Defendant corporation has defaulted on the loan. Plaintiff on January 29, 1980 enforced the security interest given by the corporation by auctioning, at a public sale, the corporation’s equipment and inventory. The sale netted plaintiff $11,537.10, which was insufficient to satisfy the amount owed by the corporation. Plaintiff here seeks to foreclose the mortgage given it by the Mitch-ells and to have the Mitchells and Kawasaki adjudged liable for any deficiency that may remain following a foreclosure sale.
*388 The Mitchells and Kawasaki assert as an affirmative defense that the sale by plaintiff of the inventory and equipment was held in a commercially unreasonable manner (Uniform Commercial Code, § 9-504). Kawasaki raises as additional affirmative defenses that plaintiff failed to give it reasonable notification of the time and place of the sale and that the sale was conducted in a negligent manner. The latter claim is also the basis of a counterclaim by Kawasaki. Finally, the Mitchells counterclaim for an order discharging the mortgage on the basis of the foregoing conduct by plaintiff.
Plaintiff contends that sufficient notice was given and that the sale of the collateral was commercially reasonable. Plaintiff further asserts that even if the notice was deficient or the sale was in some respect commercially unreasonable, the Mitchells by their guarantee waived these defenses and that, in any event, they may not be raised to oppose this foreclosure action.
It is necessary at this point to separately analyze plaintiff’s requests for relief. The action to foreclose the mortgage is not subject to the Uniform Commercial Code (Uniform Commercial Code, § 9-501, subd [4]). However, the demand for a deficiency judgment is (Federal Deposit Ins. Corp. v Forte, 94 AD2d 59). While the Uniform Commercial Code does not supply the governing law for the mortgage foreclosure, its provisions with respect to the disposal of the collateral sold at the public sale have relevance in determining whether foreclosure should be granted. Should the Mitchells be able to demonstrate that the plaintiff conducted the sale of the collateral in a commercially unreasonable manner and that the fair market value of the collateral exceeded the amount owing to plaintiff, then foreclosure should be denied since had plaintiff proceeded as required by section 9-504 of the Uniform Commercial Code the amount realized from the sale would have been sufficient to extinguish the debt. Thus, although the deficiency judgment is specifically governed by the Uniform Commercial Code and the foreclosure is not, both raise the same issues. Therefore, the Mitchells in the foreclosure action, and all the defendants in the deficiency judgment action may raise the Uniform Commercial Code *389 defenses relating to the sale of the collateral, unless there is some other reason preventing them from, doing so, such as a waiver of these defenses.
With respect to Kawasaki’s liability for a deficiency judgment, there is no question that it may assert as defenses that it did not receive proper notice of the sale and that the sale was not commercially reasonable. Subdivision (3) of section 9-504 of the Uniform Commercial Code requires that “every aspect of the disposition [of collateral] including the method, manner, time, place and terms must be commercially reasonable” and that “reasonable notification of the time and place of any public sale * * * shall be sent by the secured party to the debtor”. Subdivision (3) of section 9-501 prohibits the waiver of the rules stated in subdivision (3) of section 9-504 “[to] the extent that they give rights to the debtor and impose duties on the secured party”. Thus, the provision in the note that plaintiff is “empowered to sell * * * the collateral * * * without * * * notice of the time or place of sale * * * which [is] hereby expressly waived” is ineffective to waive any right secured to debtor by subdivision (3) of section 9-504.
However, the question of whether the Mitchells, as guarantors, may waive the right to proper notice and a commercially reasonable sale is one which has not yet been , addressed in New York by the Court of Appeals or any Appellate Division of the Supreme Court, and which has received conflicting answers in other jurisdictions. In Chase Manhattan Bank v Natarelli (93 Misc 2d 78), the court stated that “it would seem that a ‘guarantor’ is a ‘debtor’ within the meaning of article 9”, however, its precise holding was limited to including guarantor within the meaning of debtor to section 9-105 (subd [1], par [d]) and subdivision (3) of section 9-504 of the Uniform Commercial Code. Given that section 9-105 (subd [1], par [d]) defines debtor for all of article 9, the import of including that section within the court’s holding indicates that it would reach the same conclusion with respect to subdivision (3) of section 9-501. As noted above, other jurisdictions have reached opposite conclusions (cf. United States v Conrad Pub. Co., 589 F2d 949, and Ford Motor Credit Co. v Lototsky, 549 F Supp 996, with Mendelson v Maplewood *390 Poultry Co., 684 F2d 180, and United States v Kurtz, 525 F Supp 734).
Resolution of this issue is unnecessary, however, since the court holds that the Mitchells neither in the mortgage nor in the guarantee waived their right to assert the defense of commercial unreasonableness. Certainly there is no language in the mortgage by which a waiver may be found. The following is the language from the “unconditional” guarantee by which a waiver might be found:
“The undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor or any other party and Lender at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers * * *
“to realize on the collateral or any part thereof, as whole or in such parcels or subdivided interests as lender may elect, at any public or private sale or sales, for cash or on credit or for future delivery, without demand, advertisement or notice of the time or place of sale or any adjournment thereof (the Undersigned hereby waiving any such demand, advertisement and notice to the extent permitted by law), or by foreclosure or otherwise, or to forbear from realizing thereon, all as Lender in its uncontrolled discretion may deem proper, and to purchase all or any part of the collateral for its own account at any such sale or foreclosure, such powers to be exercised only to the extent permitted by law.
“The obligations of the Undersigned hereunder shall not be released, discharged or in any way affected, nor shall the Undersigned have any rights or recourse against Lender, by reason of any action Lender may take or omit to take under the foregoing powers.”
This exact language has been construed by several Federal courts in cases involving Small Business Administration guaranteed loans. Again, the cases are divided between those finding a waiver of the defense of commercial unreasonableness and those finding none (cf. Mendelson v Maplewood Poultry Co., supra, and United States v Kurtz, *391 supra, with United States v Willis, 593 F2d 247, United States v Terrey, 554 F2d 685, and U.S.A. v Chatlin’s Dept. Stores, 506 F Supp 108). The court has carefully reviewed these cases and finds that the more persuasive position is that there has been no waiver of the commercial unreasonableness defense. The court believes that the restrictive language “but subject to the provisions of any agreement between the Debtor * * * and Lender”, which security agreement impliedly includes and is governed by the constraints of subdivision (3) of section 9-504 of the Uniform Commercial Code, and the restrictive language “such powers to be exercised only to the extent permitted by law” clearly demonstrates that the lender was subject to the commercial reasonableness requirement of subdivision (3) of section 9-504. Moreover, the final quoted provision simply has the effect of not impairing the guarantor’s obligation in the event that the lender takes or opts not to take any action which it is authorized to take by the enumerated powers. That provision does not have any application to the exercise of a power which was not granted, i.e., the power to dispose of the collateral in a commercially unreasonable manner.
Plaintiff’s reliance on Executive Bank v Tighe (54 NY2d 330) is misplaced. There the Court of Appeals held that the guarantors of promissory notes were not released by the lender’s inadvertent failure to perfect a security interest given by debtor where the notes’ provisions permitted the lender to reduce or release collateral. “From a guarantor’s point of view it makes no difference when or with what intent, short of bad faith, the collateral is reduced or released. From his point of view the effect (increase of his potential liability through the decrease of his source of reimbursement) is exactly the same” (supra, p 338). Such reasoning is inapplicable to the case at bar, because here the lender’s actions provide a defense to the debtor which may be asserted against the lender or against the guarantor who, after payment to the lender, is subrogated to the lender’s rights. In Executive Bank the lender’s failure to perfect the security agreement did not give the debtor a defense to the claim. While the lender’s actions may have adversely affected the guarantor by decreasing the source *392 of his reimbursement, it had no effect on his right to reimbursement. Here, disposal of the collateral in a commercially unreasonable manner harms the guarantor not simply because the full value of the collateral is unavailable to reduce his obligation, but also because the debtor now has a viable defense to a claim by the guarantor subrogated to the lender’s rights. For this reason Executive Bank is inapplicable and the Mitchells are entitled to assert the defense that the sale was not commercially reasonable.
Turning next to Kawasaki’s claim of inadequate notice of the public sale, suffice it to say that plaintiff’s motion papers are insufficient to find, as a matter of law, compliance with the notice-by-mail requirements of subdivision (38) of section 1-201 of the Uniform Commercial Code. However, for the reasons hereinafter provided that is of no consequence. The notice provided to Mr. Mitchell personally on January 25, 1980 is equivalent to service on the corporation given the closely held nature of the corporation and his position as president (Chase Manhattan Bank v Natarelli, 93 Misc 2d 78, supra). Oral notice which gives actual notice is sufficient to comply with the requirement that notice be “sent” (supra). Alternatively, the omission to send notice is nonprejudicial when oral notice is actually given and therefore is insufficient as a defense (see Stanchi v Kemp, 48 AD2d 973). Finally, the court notes that the oral notice given on the 25th is timely since written notice sent on the 24th of January would not have arrived prior to January 25, and notice sent on the 24th complies with the security agreement provisions that notice sent at least five days prior to the sale is timely (see Uniform Commercial Code, § 1-201, subd [38]; H.E. & S. Transp. Corp. v Checker Cab Sales Corp., 271 NY 239).*
The oral notice to Mr. Mitchell on January 25 is thus reasonable notice sent to the corporation provided that the substance of the notice is sufficient. Mitchell asserts that he was not told by Mr. Smith the actual time of the sale, *393 but only that it was to be held on Tuesday, the 29th. According to Mr. Mitchell, he “blew his cork” when he was told the sale date and went after Mr. Smith, who jumped in his car, locked the doors and drove away. Neither the Uniform Commercial Code nor New York case law has defined what constitutes reasonable notice. All of the circumstances surrounding the giving of notice must be evaluated in light of the purpose of the notice requirement: to give the debtor an opportunity to protect his interest in the collateral by exercising any right of redemption or by bidding at the sale, to challenge any aspect of the disposition before it is made, or to interest potential purchasers in the sale, all to the end that the merchandise not be sacrificed by sale at less than its true value (Marine Midland Bank-Rochester v Vaeth, 88 Misc 2d 657; Rushton v Shea, 423 F Supp 468; Fedders Corp. v Taylor, 473 F Supp 961). Defendant has made no allegation whatever that it was in any way prejudiced by the omission of the time of sale, or that the accomplishment of any of the purposes of reasonable notice was hindered by the omission. While Mr. Mitchell did not arrive at the beginning of the sale, and so was unable to bid on certain of the items, his late arrival was not on account of the allegedly unreasonable notice but because he chose to tend to other business first. Similarly, Mitchell’s failure to attempt to interest other dealers and potential buyers in the sale was due to his belief that he did not have sufficient time to do so, rather than that he could not give them an exact starting time for the sale. “[Tjhe failure of plaintiff to comply with the provisions of subdivision (3) of section 9-504 of the code would not discharge the defendant from all liability under the contract. If the defendant is prejudiced * * * defendant is entitled to all damages caused thereby” (Stanchi v Kemp, 48 AD2d 973, 974, supra; emphasis added). Defendant has alleged no prejudice which would raise an issue of fact of whether the notice was reasonable. While the court’s obligation is only to find fact issues rather than determine them, it must be remembered that defendants’ obligation in opposing a motion for summary judgment is to lay bare their proof, because a “shadowy substance” of an issue is insufficient to defeat the motion (Capelin Assoc. v Globe *394 Mfg. Corp., 34 NY2d 338; Little v Blue Cross of Western N. Y., 72 AD2d 200).
The court turns next to the defense that the sale was not commercially reasonable. While it is a very close question of whether defendants have raised a question of fact regarding that issue, the court abides by the rule that summary judgment should be denied “whenever there is doubt as to the existence of a triable issue or when the issue is arguable” (Falk v Goodman, 7 NY2d 87, 91). Whether a particular procedure is commercially reasonable is a question of fact (National Bank v Gregory, 85 AD2d 839; Madaro Trading Corp. v National Bank, 64 AD2d 977). Thus, agreement as to the facts of the sale does not compel summary judgment, for the undisputed circumstances of the sale may present a question of fact as to whether the sale was commercially reasonable.
Each party essentially points to the facts and asserts that they support their position. For instance, there is no question regarding the amount of advertising done to publicize the sale. On January 26 and 28 an ad appeared in the Ithaca Journal, and on January 27 an ad appeared in the Elmira Star Gazette & Sunday Telegram. Plaintiff argues that this amount of advertising is commercially reasonable, and contends that its position is supported by the number of persons and businesses which attended the auction. Defendant, on the other hand, argues that the three “small” ads, the first of which appeared only three days prior to the sale, are inadequate to publicize the sale in a commercially reasonable manner. The court observes that a review of the bidding cards distributed at the sale indicate that practically all the persons and businesses present were from either Ithaca or Elmira or communities surrounding these cities. Thus it seems entirely credible that advertising elsewhere, such as Syracuse and Binghamton, would have drawn additional bidders to the sale. Moreover, it appears that beyond the three advertisements and perhaps a phone call or two by Mr. Smith no effort was made to inform those persons or businesses in central New York engaged in business similar to that of Kawasaki, which persons would be the most likely to be interested in the items to be sold.
*395 A significant factor which leads the court to deny summary judgment is Mitchell’s sworn statement that the equipment and inventory sold by plaintiff had a value of over $100,000. His statement is based on an inventory of assets listed at cost done by Kawasaki in September of 1979. He further states that the inventory was accurately done for and in compliance with requirements established by the plaintiff, and that the plaintiff never questioned the inventory’s accuracy. Moreover, he asserts that by January, 1980 the value of the inventory had increased due to subsequent purchases by Kawasaki. Plaintiff asserts that Mitchell’s statement is merely conclusory and that value cannot be shown by cost. It is clearly not conclusory since it is based on documentary evidence provided to plaintiff which, at the least, plaintiff never objected to. Objections to its validity or accuracy merely raise a question of fact. The use of cost has been accepted as a guide in evaluating the commercial reasonableness of a sale of collateral (Lincoln First Bank v Salvaterra, 106 Misc 2d 51). “[Mjarked discrepancy between sale [i.e., original cost] and disposal prices will be sufficient to defeat a creditor’s motion for summary judgment” (Kohler v Ford Motor Credit Co., 93 AD2d 205, 208; see, also, Central Budget Corp. v Garrett, 48 AD2d 825, 825-826). Moreover, plaintiff has produced no evidence of the market value of the goods, but rather has adduced estimates of what amount the secured property was likely to bring at the contemplated auction. Yet defendants’ position is that the auction as planned and conducted would not obtain the market value of the goods. At the very least there is a question of fact as to the value of the secured property.
Other factors considered by this court are that plaintiff was not familiar with the value of motorcycle parts or motorcycle dealerships, that plaintiff did not obtain an independent appraisal of the value of the secured property, or advice as to whether it would be better to sell some of the collateral by other than public auction. Additionally, defendants allege that plaintiff acted in a hasty and slipshod manner because of an excessive concern with minimizing expenses and because the Small Business Administration had already paid to them 90% of the outstanding balance of the loan.
*396 While each case must be judged upon its own particular circumstances, this case is not that different from United States v Terrey (554 F2d 685, supra). There the Court of Appeals held that a question of fact for a jury was presented where there was evidence that the secured party made a hasty decision within two days of taking possession of the collateral that it should be sold at a public sale, that the secured party never took a history of the business, never obtained an independent appraisal, nor contacted competitors to notify them of the sale, that the secured party’s actions were motivated by a desire to avoid an extra month’s rent of $500, and that the sale realized only $27,200 while debtor had estimated the value of the collateral at $121,300. While in that case there was the possibility of a private sale then being negotiated by the debtor, here Mitchell had no reasonable opportunity to try to arrange a private sale since the public auction was held within eight days of plaintiff’s taking possession of the collateral and within four days of the notice of sale provided to Kawasaki. On this record the court cannot rule, as a matter of law, that the sale was commercially reasonable, and so summary judgment on this issue must be denied.
Plaintiff is granted partial summary judgment on the issue of whether Kawasaki received reasonable notification of the public sale. Plaintiff’s motion is in all other respects denied. It follows that defendants’ cross motions are denied.

 The parties may not waive or vary the requirement of reasonable notice, but they “may by agreement determine the standards by which the fulfillment of [this requirement] is to be measured if such standard [is] not manifestly unreasonable” (Uniform Commercial Code, § 9-501, subd [3]). Notice sent five days in advance of sale is the standard agreed to by the parties and is not manifestly unreasonable.