BANK OF HAWAII, a Hawaii corporation, and UNITED STATES OF AMERICA, Plaintiffs-Appellees, *v.* DAVIS RADIO SALES & SERVICE, INC., a Hawaii corporation; DAVIS RADIO CORPORATION, a Hawaii corporation; ROSS ALAN DAVIS and NORIKO DAVIS, Defendants-Appellants, and RADIO SPECIALISTS, INC., a Hawaii corporation; HUGH J. CAMPBELL; NANCY I. CAMPBELL; PHILIP W. BRIDGES; AKIKO K. BRIDGES; WALLACE S. TAO; MIWAKO TAO; GIBRALTER SAVINGS AND LOAN ASSOCIATION, a California corporation; JASON A. McCREE; FIRST FEDERAL BANK OF CONNECTICUT, fka First Federal Savings and Loan Association of New Haven, a Connecticut corporation; and ASSOCIATION OF APARTMENT OWNERS OF RIDGECREST-MELEMANU WOODLANDS by its Board of Directors, Defendants-Appellees, and JOHN DOES 2-10, and DOE PARTNERSHIPS, CORPORATIONS AND OTHER ENTITIES 4-10, Defendants

NO. 11039

(CIVIL NO. 52849)

OCTOBER 30, 1986

HEEN, ACTING C.J., TANAKA, J., AND CIRCUIT JUDGE
DANIEL HEELY IN PLACE OF CHIEF JUDGE BURNS, RECUSED

470

OPINION OF THE COURT BY HEEN, ACTING C.J.

Defendants-appellants Davis Radio Sales and Service, Inc. (DRSS), Davis Radio Corporation (DRC), Ross Alan Davis (Davis), and Noriko Davis (hereinafter, where appropriate, Ross Alan Davis and Noriko Davis will be collectively referred to as the Davises, and all defendants-appellants will be collectively referred to as Defendants) appeal (1) the trial court's June 17, 1981 order (June 17, 1981 order) authorizing plaintiff-appellee Bank of Hawaii (BOH) to proceed with the foreclosure of a second mortgage (mortgage) executed by the Davises; and (2) an interlocutory decree of foreclosure (interlocutory decree) of that mortgage in favor of plaintiff-appellee the United States

of America on behalf of the Small Business Administration (SBA).[1] We vacate the order and the interlocutory decree, and remand for further proceedings.

## FACTS

In 1973, Davis was the sole stockholder of DRSS and DRC, two Hawaii corporations. In August of 1973, DRSS obtained a $100,000 line of credit (line of credit) from BOH in order to purchase car radios and stereos to sell in its business. The loan was secured by security interests in DRSS' and DRC's inventory, accounts receivable, and after-acquired property, and guaranties from DRC and the Davises personally. Between December 6, 1974, and June 30, 1975, BOH made nine loans to DRSS under the line of credit, totalling approximately $60,455.

On September 17, 1974, DRSS obtained from BOH a further $100,000 loan guaranteed by SBA (SBA guaranteed loan). The proceeds of the SBA guaranteed loan were to be used to pay $50,000 to First Hawaiian Bank[2] on a previous debt and $50,000 for working capital. DRSS again secured the loan with its business inventory, accounts receivable, and after-acquired property. As additional security, the Davises executed another personal guaranty and the mortgage on their personal residence in favor of BOH.[3]

On September 1, 1976, Davis sold DRSS and all of its inventory to Radio Specialists, Inc. (RSI), a Hawaii corporation formed by three former DRSS employees, Hugh J. Campbell (Campbell), Phillip W. Bridges (Bridges) and Wallace Tao (Tao). RSI assumed all of the debts and obligations owed by DRSS and gave BOH security interests in RSI's inventory and accounts receivable. BOH retained all the security it had obtained from DRSS, DRC, and the Davises, including the

---

[1]Bank of Hawaii (BOH) filed the original complaint. The United States of America on behalf of the Small Business Administration (SBA) was later substituted for BOH in the mortgage foreclosure.

[2]The opening brief states that payment was to be made to BOH. However, the record indicates payment was to be made to First Hawaiian Bank.

[3]The Davises' guaranty for the SBA guaranteed loan states that they were providing two mortgages as security. However, the dispute here is only over the mortgage on the Davises' residence.

mortgage. In May, 1977, RSI ceased making payments on the loans.

## PROCEDURAL HISTORY

On October 20, 1977, BOH filed suit against Defendants, RSI, and Campbell, Bridges, Tao, and their wives,[4] alleging that defendants owed BOH $44,454.61 on the line of credit and $84,177.41 in principal and $3,824.72 in interest on the SBA guaranteed loan.[5] The complaint sought possession of RSI's business inventory, which BOH alleged to be valued at $47,000, and judgment against all the defendants individually. BOH seized the business inventory pursuant to an *ex parte* order of the lower court, and on February 25, 1978, sold it at auction for $11,839.26. The net proceeds of $8,879.44 were applied to the repayment of the line of credit debt. Defendants were not given notice of the sale as required by Hawaii Revised Statutes (HRS) § 490:9-504(3) (Supp. 1984).[6]

---

[4]Campbell, Bridges, Tao, and their respective wives all executed continuing guarantees for RSI's assumption of DRSS' obligations.

[5]BOH was allowed, pursuant to proper motion and order, to proceed also against unidentified defendants; however, the record does not reveal that BOH identified any other defendants. When SBA was substituted for BOH as plaintiff, SBA named other defendants who it alleged might have interests in the Davises' real property.

[6]Hawaii Revised Statutes (HRS) § 490:9-504(3) (Supp. 1984) provides:
Secured party's right to dispose of collateral after default; effect of disposition.

\* \* \*

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

On May 11, 1979, Defendants filed a motion for summary judgment on the ground that BOH's failure to give them notice of the sale of the business inventory discharged them from all liability for the balance due on the loans. On May 25, 1979, BOH filed a motion to amend count V of the complaint so as to allege that the Davises had executed the mortgage as further security for the SBA guaranteed loan and that BOH had the right to foreclose the mortgage on account of the default.[7] BOH also filed a cross-motion for summary judgment for the balance owed on the SBA loan and for foreclosure of the mortgage. On June 29, 1979, the trial court heard arguments on the motions and rendered an oral decision authorizing the amendment and the foreclosure.

After BOH and Defendants moved for clarification of the oral decision, the trial court entered the June 17, 1981 order appealed from. The lower court found that there were two loans from BOH to DRSS: "one secured by the Defendants' business inventory and evidenced by documents relating to UCC [Uniform Commercial Code] Security Interests, and the other secured and evidenced by Defendants' second mortgages[8] on real property." (Footnote added.) The order denied BOH's request for a "deficiency judgment[9] as to the loan commitment secured by the business inventory[,]" (footnote added) based upon BOH's violation of HRS § 490:9-504(3). However, BOH was permitted to foreclose on the mortgage upon proof of default. Both parties appealed the June 17, 1981 order, but the supreme court, on April 27, 1983, dismissed their appeals for lack of a final judgment.

On October 6, 1983, SBA moved to be substituted for BOH as plaintiff in count V, the mortgage foreclosure count. The motion, based upon BOH's assignment of the mortgage to SBA on September 29, 1982, was granted on January 13, 1984.

On April 11, 1984, SBA filed a motion for summary judgment and

---

[7]BOH also moved to amend the balance due on the SBA guaranteed loan to $83,241.41.

[8]*See* footnote 3, *supra.*

[9]We note that the use of the term "deficiency judgment" in this context is inappropriate, since such judgments are entered after pledged collateral has been seized and sold. *See Bank of Honolulu v. Anderson,* 3 Haw. App. 545, 654 P.2d 1370 (1982). However, it was used by the lower court and the parties to the appeal; therefore, we will continue its use to avoid unnecessary confusion.

475

for an interlocutory decree of foreclosure, which was denied. On April 2, 1985, SBA's motion for reconsideration was granted and the trial court granted partial summary judgment to SBA on the question of Defendants' default. However, the lower court reserved ruling on the question of SBA's right to foreclose the mortgage. On October 16, 1985, the trial court found that Defendants owed SBA a total of $183,973.59 on the SBA guaranteed loan and entered the interlocutory decree. Defendants appealed.[10]

Defendants contend that the trial court erred in authorizing BOH and SBA to proceed with foreclosure, and entering the interlocutory decree, because (1) there was only one loan from BOH to DRSS; (2) there is no deficiency because the commercially unreasonable sale of the business inventory discharged the entire indebtedness; and, therefore, (3) there was no default on the obligation underlying the mortgage.

I.

"A motion for summary judgment is properly granted under Rule 56(c), Hawaii Rules of Civil Procedure (HRCP) (1980), if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *McKeague v. Talbert*, 3 Haw. App. 646, 650, 658 P.2d 898, 902-903 (1983). We hold that there are genuine issues of material fact in this case; however, they are not the factual issues urged by Defendants.

Defendants argue that whether there were two loans or one loan is a genuine issue of material fact. We agree with the lower court's finding

---

[10]On February 28, 1986, SBA filed a motion to dismiss this appeal for "lack of appellate jurisdiction on the grounds that the orders and judgments appealed from are not final appealable orders." On March 17, 1986, BOH joined in SBA's motion. On March 20, 1986, the supreme court denied the motion to dismiss the appeal on the basis of *Forgay v. Conrad,* 47 U.S. 201, 6 How. 201, 12 L.Ed. 404 (1848), and on May 7, 1986, denied SBA's motion for reconsideration of the order dismissing the motion. Under the *Forgay-Conrad* rule, the lower court's order is treated as final for appeal purposes where the losing party would be subject to irreparable injury if appellate review had to await the final outcome of the litigation.

On May 17, 1986, the supreme court granted Defendants' motion to stay the execution of the decree of foreclosure pending the appeal.

that there were two loans.[11] However, the question of whether there were two loans or one is irrelevant and the issue is not one of material fact. The issues of material fact, regardless of the number of loans, are (1) the fair market value of the business inventory at the time of the disposition sale; and (2) whether Defendants suffered damages from the lack of notice to them of the disposition sale. Since those questions exist, the lower court erred in holding that BOH was not entitled to a deficiency judgment[12] and abused its discretion in entering the interlocutory decree.

We discuss first the June 17, 1981 order.

## II.

The June 17, 1981 order denying a deficiency judgment to BOH preceded and is contrary to *Liberty Bank v. Honolulu Providoring, Inc.*, 65 Haw. 273, 650 P.2d 576 (1982) (hereinafter *Providoring*), where the supreme court stated:

> We therefore adopt the "rebuttable presumption" rule in this jurisdiction. If the secured creditor fails to comply with notification requirements or disposes of a collateral other than in a commercially

---

[11]We disagree with the lower court as to the description of the two loans. The lower court held that one of the loans was secured by the Uniform Commercial Code (UCC) security interests, and the other by the mortgages. In our view, however, the two loans are the line of credit and the SBA guaranteed loan. The record indicates that the line of credit was secured by the business inventory and DRC's and Davises' guaranty, while the SBA guaranteed loan was secured by the same business inventory and the Davises' guaranty and mortgage. SBA states in its opening brief that "[i]t is not disputed that both the BOH line of credit loans and the SBA guaranteed participation loan were secured by the same inventory."

[12]BOH states in its answering brief that it is participating in this appeal to protect its right to a deficiency judgment. However, it did not appeal from the June 17, 1981 order. Therefore, a threshold question is whether the issue of the correctness of the lower court's ruling in the June 17, 1981 order that BOH was not entitled to a deficiency judgment is before us in this appeal. We find that the posture of Defendants' appeal is such that the correctness of the trial court's holding may be reviewed by us.

Defendants here challenge the factual basis for the ultimate ruling by the lower court that the mortgage may be foreclosed. While they challenge only the finding of the trial court that there are two loans, they also argue that there can be no foreclosure because of the lower court's ruling that BOH was not entitled to a deficiency judgment. Consequently, the question of the correctness of the lower court's ruling against a deficiency judgment is necessarily brought into question. *See In Re Estate of Lorenzo*, 61 Haw. 236, 602 P.2d 521 (1979).

reasonable manner, the secured creditor will have the burden of rebutting the presumption that the fair market value of the collateral equals the unpaid balance of the outstanding debt. In proving the fair market value of the collateral, the secured creditor who fails to comply with the requirements of the Code may not rely solely on the value received on resale, but must prove the value of the collateral by other evidence. Moreover, to the extent that the debtor is harmed by the secured creditor's failure to comply with proper notification and commercial reasonableness requirements, the debtor will be entitled under HRS § 490:9-507(1)[13] to have the amount of damages sustained set-off against any deficiency the secured creditor would otherwise recover.

*Id.* 65 Haw. at 282, 650 P.2d at 583 (footnote added). In our review of the June 17, 1981 order, we apply the rule of *Providoring,* notwithstanding the fact that it was announced after the ruling below. "When there is a change in the law by court decision between the time of the trial court ruling and the time of appeal, the appellate court applies the law prevailing at the time of the appellate disposition." *Bischofshausen v. Pinal-Gila Counties Air Quality Control District,* 138 Ariz. 109, 110, 673 P.2d 307, 308 (1983).

Under *Providoring,* BOH was entitled to a deficiency judgment if it could have produced evidence rebutting the presumption that the fair market value of the collateral was equal to the balance due on DRSS'

---

[13]HRS § 490:9-507(1) (1976) reads as follows:

Secured party's liability for failure to comply with this Part. (1) If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time differential plus ten per cent of the cash price.

It is not clear from *Providoring* what the debtor's damages would consist of; however, HRS § 490:1-106 (1976) provides that the UCC remedies shall be liberally administered so as to put the aggrieved party in as good a position as if the other party had fully performed. However, neither consequential or special nor penal damages may be recovered, except as provided by the UCC or other rule of law. Consequential damages are provided for in other sections of the UCC not applicable here. *See, e.g.,* HRS § 490:2-715 (1976).

debt. Conversely, if BOH was unable to overcome the presumption established by *Providoring,* Defendants were entitled to have the debt extinguished, or if the fair market value of the business inventory was shown to be higher than the sale price but lower than the debt due, Defendants were entitled to have the debt reduced by the difference between the fair market value and the sale price. Additionally, Defendants were entitled to prove any damages they suffered as a result of the failure to notify them of the sale. Thus, those questions of fair market value and damages are issues of material fact. *Id.; First Bank and Trust Co. of Ithaca v. Mitchell,* 123 Misc. 2d 386, 473 N.Y.S.2d 697 (1984).

The lower court, while recognizing the split of authorities relating to sales of collateral without notice to the debtor, applied the wrong rule of law and erroneously granted summary judgment to Defendants on the deficiency judgment issue. The fair market value of the business inventory at the time of sale and the damages suffered by Defendants must be determined prior to the determination of a deficiency judgment. Since those questions remain at issue, this matter must be remanded for their determination. *Providoring, supra.*

As will be shown below, the existence of those questions also precluded the entry of the interlocutory decree.

III.

A.

The provisions of HRS chapter 490, article 9 (1976 and Supp. 1984), which govern the rights of secured creditors to proceed against the collateral pledged by a debtor as security, do not apply to security interests in real estate. HRS § 490:9-104(j) (1976).[14] 68 Am. Jur. 2d *Secured Transactions* § 31 (1973); *First Bank and Trust Co. of Ithaca v. Mitchell, supra.* The UCC provides that, where a security agreement

---

[14]HRS § 490:9-104(j) (1976) provides:
Transactions excluded from article.   This Article does not apply

\*   \*   \*

(j) Except to the extent that provision is made for fixtures in section 490:9-313, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder[.]

covers both real and personal property, the secured party may, upon breach of the underlying agreement by the obligor, proceed against the real property separately from the personalty or against both the real property and the personalty. HRS § 490:9-501(1) and (4) (1976).[15] In the latter event the UCC provisions do not apply and the creditor's rights are determined by the law relating to real property. *Id.*

Although it is not clear whether the creditor who has security interests in both personalty and realty supporting the same transaction may proceed against the two forms of property by separate suits to enforce his liens, *see* 69 Am. Jur. 2d *Secured Transactions* § 559, note 80 (1973), it is clear that the UCC does not govern the creditor's remedies for default on the mortgage. *Id.* It is also unclear whether, where only one action is filed against the two types of property, the creditor's remedy against the personalty continues to be governed by the UCC or strictly by real property law. *See* 69 Am. Jur. 2d *supra,* § 559.

We find *First Bank and Trust Co. of Ithaca v. Mitchell, supra,* to be instructive on the relationship between the two bodies of law. There, the supreme court of New York held that the action to foreclose the mortgage was not subject to the UCC, but that the demand for deficiency judgment was. The court stated that:

> While the UCC does not supply the governing law for the mortgage foreclosure, its provisions with respect to the disposal of the collateral sold at the public sale have relevance in determining whether

---

[15]HRS § 490:9-501 (1) and (4) (1976) provide:

Default; procedure when security agreement covers both real and personal property. (1) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this Part and except as limited by subsection (3) those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. If the collateral is documents the secured party may proceed either as to the documents or as to the goods covered thereby. A secured party in possession has the rights, remedies and duties provided in section 490:9-207. The rights and remedies referred to in this subsection are cumulative.

* * *

(4) If the security agreement covers both real and personal property, the secured party may proceed under this Part as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property in which case the provisions of this Part do not apply.

foreclosure should be granted. Should the Mitchells be able to demonstrate that the plaintiff conducted the sale of the collateral in a commercially unreasonable manner and that the fair market value of the collateral exceeded the amount owing to plaintiff, then foreclosure should be denied since had plaintiff proceeded as required by UCC § 9-504 the amount realized from the sale would have been sufficient to extinguish the debt.[16] Thus, although the deficiency judgment is specifically governed by the UCC and the foreclosure is not, both raise the same issues. Therefore, the Mitchells in the foreclosure action, and all the defendants in the deficiency judgment action may raise the UCC defenses relating to the sale of the collateral, unless there is some other reason preventing them from doing so, such as a waiver of these defenses.

*Id.* 123 Misc. 2d at 388, 473 N.Y.S.2d at 699 (footnote added).

In the case at hand, although BOH's failure to give notice of the disposition sale would not *per se* discharge the debt in question, the fact that there had been no determination of the consequences of the sale without notice in accordance with *Providoring,* precluded the interlocutory decree. *First Bank and Trust Co. of Ithaca v. Mitchell, supra.*

The June 17, 1981 order erred in holding that BOH was not entitled to a deficiency judgment but was allowed to foreclose on the mortgage. If BOH was not entitled to the deficiency judgment, then the debt was extinguished and the mortgage foreclosure should have been denied.[17] *First Bank and Trust Co. of Ithaca v. Mitchell, supra.* Our holding has support in the principles governing BOH's and SBA's rights under the law relating to mortgage foreclosures.

B.

When BOH transformed its action into a mortgage foreclosure, the

---

[16]The holding in *First Bank and Trust Co. of Ithaca v. Mitchell, supra,* places the burden of proof on the debtor. Under *Providoring, supra,* BOH has the burden of overcoming the presumption that the fair market value of the business inventory was equal to the unpaid balance of the debt. *Id.* 65 Haw. at 282, 650 P.2d at 583.

[17]In its answering brief, SBA concedes that the general rule is "that a mortgage is merely an incident to the debt which it secures and that without the debt the mortgage is 'extinguished,'" citing 3 Powell, Real Property ¶ 455, p. 695.

proceeding became equitable in nature, *see Honolulu Plantation Co. v. Tsunoda,* 27 Haw. 835 (1924), and the case was thereafter governed by the rules of equity. A complaint in equity is an appeal to the exercise of the equity court's sound discretion, *Fleming v. Napili Kai, Ltd.,* 50 Haw. 66, 430 P.2d 316 (1967). Equity jurisprudence is not bound by strict rules of law, but can mold its decree "to do justice," *id.,* and a court of equity, once having assumed jurisdiction, may retain the case to afford complete relief. *Tugaeff v. Tugaeff,* 42 Haw. 455 (1958).

In view of the contingencies attendant upon the determination of the consequences of BOH's UCC violation, the lower court, in the exercise of its equity powers, should have denied the interlocutory decree until it had heard and determined the commercial reasonableness of the disposition sale. BOH might not have been able to rebut the presumption, in which case the debt should have been discharged, *Providoring, supra,* and foreclosure denied. *First Bank and Trust Co. of Ithaca v. Mitchell, supra.* On the other hand, Defendants' offsets may also have been sufficient to reduce the debt balance to a sum that the Davises could have paid or made arrangements to pay and avoid a foreclosure sale. Only after that determination had been made and Defendants properly credited with the market value of the business inventory and any damages they have suffered, should the interlocutory decree have been issued.

We turn now to a consideration of SBA's rights as BOH's assignee.

C.

When SBA as BOH's assignee was substituted for BOH as plaintiff, it stepped into the shoes of BOH and its rights, in turn, are determined by the law of assignments and mortgage foreclosures. *Jones v. Central States Investment Co.,* 654 P.2d 727, 732 (Wyo. 1982). *See also* 6 Am. Jur. 2d *Assignments* § 102 (1963). The general rule is that the assignee of a mortgage takes subject to all rights of setoff held by the debtor at the time of the assignment. 55 Am. Jur. 2d *Mortgages* § 1364 (1971); *see, Daly v. Shrimplin,* 610 P.2d 397 (Wyo. 1980).

When BOH began this action, it was seeking to enforce its rights under the UCC only against the business inventory. When BOH amended the complaint to include the foreclosure, the entire proceeding

was taken out of the provisions of the UCC and the law relating to mortgages governed. However, the sale of the business inventory took place before the law governing real property became applicable. Immediately upon the sale of the business inventory, Defendants were entitled to have the lower court determine the fair market value of the collateral and Defendants' damages in accordance with *Providoring*. We see no reason why BOH should be allowed to cut off that right merely by converting the action to one in foreclosure.

When the mortgage was assigned to SBA, BOH had already violated the UCC notice provisions. At that time Defendants were entitled either to a discharge of the entire debt if BOH were not able to overcome the presumption regarding market value, *Providoring, supra,* or to set off any losses they may have suffered as a consequence of the commercially unreasonable sale against BOH's claim for a deficiency.[18] *Id.* Defendants are entitled to the same setoffs against SBA. 55 Am. Jur. 2d, *supra; see Daly v. Shrimplin, supra.*

## IV.

### A.

Citing *Hawaii Leasing v. Klein,* 5 Haw. App. 450, 698 P.2d 309 (1985), the Davises argue that under the guaranty they were only secondary obligors and, since the commercially unreasonable sale extinguished the debt, they should be discharged. Their reliance on *Hawaii Leasing, supra,* is misplaced. *Hawaii Leasing, supra,* involved a conditional guaranty in which the guarantor's liability for the unperformed obligation depended upon the creditor's sale of the merchandise in a

---

[18]Defendants argue that if BOH had been more attentive to RSI's business practices and/or seized the business inventory at an earlier date it could have obtained a better sales price. Defendants contend that they were prejudiced by BOH's inaction. Where there has been a failure to comply with the UCC provisions relating to disposition of collateral, a debtor may recover any losses he has suffered. HRS § 490:9-507(1) (1976). There is nothing in the UCC requiring a creditor to take possession of pledged collateral upon default and Defendants cannot complain of BOH's inaction. Only losses occasioned by BOH's failure to give notice would be recoverable by Defendants.

commercially reasonable manner. Here, the guaranty was unconditional.

### B.

SBA argues that the Davises' rights as guarantors are determined by federal law since the transaction was entered into under a federal program. It asserts that federal law holds that the waiver provisions of the SBA guaranty are valid, citing *United States v. New Mexico Landscaping, Inc.,* 785 F.2d 843 (10th Cir. 1986), and that guarantors are not debtors as defined in the UCC and can waive the notice and commercially reasonable sale provisions of the UCC, citing *First National Park Bank v. Johnson,* 553 F.2d 599 (9th Cir. 1977).

The argument is specious. In both cases the federal courts of appeal pointed out that the law of the individual state determined the substantive questions involved. In the New Mexico case the federal court applied New Mexico law. In *First National Park Bank v. Johnson, supra,* the court, noting that there were no Montana cases addressing the issue of whether a guarantor can avail himself of the presumption arising from a commercially unreasonable sale, proceeded to interpret the UCC as saying that guarantors are not debtors within UCC § 9-501(3) (HRS § 490:9-501(3)) and therefore, were not precluded from waiving the defense of lack of notice. Similarly, in *United States v. Gleneagles Investment Co., Inc.,* 584 F. Supp. 671 (M.D. Penn. 1984), also cited by SBA, the court acknowledged the Pennsylvania rebuttable presumption rule. However, in the absence of a Pennsylvania rule regarding the consequences of a failure to rebut the presumption, the court predicted that the Pennsylvania supreme court would not apply the presumption to extinguish security interests in mortgages given as additional security for the debt.

The holding of those cases are in conflict with *Providoring.* However, since it is this jurisdiction's law which is applicable, *United States v. New Mexico Landscaping, Inc., supra; First National Park Bank v. Johnson, supra, Providoring's* holding that "[t]he requirement of commercial unreasonableness and notification are fundamental rights of the debtor and may not be varied or waived" is the "federal" law in this case. *Providoring* also held that a guarantor is a borrower or debtor for purposes of the notice and commercially reasonable requirements of

HRS § 490:9-504(3).[19]

Therefore, the Davises can avail themselves of the rebuttable presumption of *Providoring*.[20]

SBA also cites *Siltzer v. North First Bank*, 445 So.2d 649 (Fla. App. 1984), in support of its argument that the fact that a commercially unreasonable sale will result in a denial of a deficiency judgment does not preclude the creditor from pursuing its right to foreclose a mortgage securing the underlying debt. *Siltzer* is inapposite. Unlike Hawaii, Florida is not a rebuttable presumption jurisdiction but absolutely bars deficiency judgments where there has been violation of the UCC notice of disposition requirement. *Providoring*, 65 Haw. at 280, 650 P.2d at 582. Inasmuch as the deficiency judgment is denied in Florida, it would be an injustice to the mortgagee to also deny him his right to foreclosure. In our case, we are not denying SBA's right to foreclose, except if BOH cannot rebut the presumption. As noted above, our result comports with equitable principles applicable in mortgage foreclosures.

V.

We vacate the June 17, 1981 order and the interlocutory decree. This matter is remanded for determination of the market value of the business inventory and any setoffs Defendant may have against the balance of the debt in accordance with this opinion and *Providoring*. After that determination is made, the court may consider whether it will order foreclosure of the mortgage and sale of the real property. If foreclosure is allowed, a deficiency judgment may be entered after the foreclosure sale, in an amount dependent upon the outcome of the hearing regarding setoff and the results of the foreclosure sale.

Remanded for further proceedings consistent with this opinion.

*Jeffrey M. Taylor* for defendants-appellants.

*Roy T. Chikamoto*, Special Assistant U.S. Attorney, U.S. Attor-

---

[19]The individual defendants in *Providoring* were guarantors.

[20]In *Hawaii Leasing v. Klein*, 5 Haw. App. 450, 698 P.2d 309 (1985), an action against a guarantor, we held that the law of guaranty contracts was controlling rather than the UCC. There, the parties agreed that whether the equipment lease involved was a secured transaction was irrelevant, and we held that the requirement that the creditor exercise good faith in disposing of the collateral was coterminus with the obligation to dispose of it in a commercially reasonable manner.

ney's Office, for plaintiff-appellee United States of America, on behalf of SBA.

*Emma S. Matsunaga* (*Vernon Y.T. Woo* and *Foster Thorbjornsen* with her on the brief; *Woo, Kessner & Duca* of counsel) for plaintiff-appellee BOH.