Jack DEASON, J.W. Carden, and Virginia Ann Kistler *v.*
FARMERS AND MERCHANTS BANK OF ROGERS,
ARKANSAS, and Harris-McHaney Real Estate Co.

89-14                                       771 S.W.2d 749

Supreme Court of Arkansas
Opinion delivered June 12, 1989

*Jeff Slaton*, for appellant.

*Hardy W. Croxton, Jr.*, for appellee.

DAVID NEWBERN, Justice. Appellants Jack Deason and Virginia Ann Kistler are the children of Mavis Deason Carden, deceased, and appellant J.W. Carden is her widower. Jack Deason sued appellees Farmers and Merchants Bank of Rogers, Arkansas, and Harris-McHaney Real Estate Co., alleging breach of an obligation to exercise good faith with respect to the sale of property Mavis had mortgaged to the bank. J.W. Carden joined as a plaintiff in that action, alleging the tort of outrage, bad faith, and breach of contract because the bank had improperly withheld a certificate of deposit (CD), in which he had an interest, to assure payment of interest on the note which was secured by Mavis's mortgage. Virginia Kistler brought a separate action, which was later consolidated for trial with the claims of Jack and

J.W., alleging the tort of outrage against the bank. All three appellants sought damages for mental anguish caused by the bank's conduct in forcing payment of interest on Mavis's loan during a time when Mavis was dying of cancer and Virginia was handling her business affairs under a power of attorney. It was alleged that the bank and Harris-McHaney had sold the mortgaged property prematurely for less than its value just to assure payment of the note and interest before Mavis's death and to avoid entanglement in probate.

The trial court found that Jack and Virginia lacked standing to sue the bank and Harris-McHaney for outage resulting from enforcement of a contract to which they were not parties, and summary judgment was granted with respect to those claims. J.W.'s claims went to trial. He amended his complaint to conform to the proof of conversion of the CD, and on that claim the jury awarded J.W. $17,000 compensatory damages and $10,000 punitive damages. The court directed a verdict as to J.W.'s claims of outrage and bad faith. A new trial was granted with respect to the conversion award in favor of J.W.

Jack, J.W., and Virginia appeal from the summary judgment and directed verdict orders. J.W. appeals from the order granting a new trial. W affirm the summary judgment and directed verdict orders because the proof offered in response to the summary judgment motions and during the trial did not demonstrate the tort of outrage or bad faith. We reverse the order granting a new trial because the trial court had lost jurisdiction to award a new trial when the motion was granted.

In 1981 Jack needed to borrow $45,000. Mavis had a long-standing credit relationship with the bank and could borrow the money more easily than Jack. She arranged to borrow $45,000 on her signature alone. A bank officer noted on the margin of the note that Mavis's purpose was to lend the money to her son. The note was payable upon demand or in one year. Prior to the date of the loan Jack conveyed to Mavis a house and lot which she later mortgaged to the bank upon renewal of the note. Jack testified that he and Mavis had an understanding that the house would be sold and any proceeds in excess of the $45,000 he owed her would be his.

Mavis again renewed the note May 17, 1983. Interest on the

note had not been paid, and there is a conflict in evidence over whether the bank asked that interest be paid at that point. Mavis died of cancer January 17, 1984. Bank officers testified that during 1983 examiners had questioned the loan because of the lack of payment of principal or interest and had questioned whether the mortgaged property was adequate security despite the appraisal of the property at approximately $70,000.

The bank "flagged" a $15,000 CD owned jointly by Mavis, J.W., and Virginia. A bank employee testified that "flagging" meant that before the money represented by the CD could be withdrawn or any action taken with respect to it, a bank officer would have to be consulted. J.W. attempted to renew the CD when it matured in December, 1983, but the bank refused to allow him access to the funds represented by the CD unless he paid approximately $3,300 in interest due on Mavis's note. Virginia, who was living in Missouri and who was a former employee of the bank, was in Rogers at Christmas time shortly before Mavis's death. She spoke with Mr. Reves, a bank officer, and was told the CD money was being held until the interest on the note was paid. Virginia and J.W. were told that the bank intended to foreclose on the note and hold the CD to assure payment of any shortage which might result.

On January 13, 1984, four days prior to Mavis's death, the bank called J.W. and asked him to come in and pay the interest. When he asked what the bank wanted him to do, he was told $8,000 should handle it. Using the CD money, he paid interest on the loan of $7,373.60 and $629.40 was paid on the principal.

The mortgaged property had been listed with Harris-McHaney. On January 7, 1984, an offer of $55,000, contingent on the buyer selling his present home and obtaining financing in the amount of $40,000, was received. Shirley Yost, a Harris-McHaney employee testified that Virginia rejected the offer. Virginia testified it was not communicated to her. On January 10, 1984, an offer of $46,000, which was roughly the amount remaining due on the loan, was made and accepted by Virginia. It was alleged that Yost knew the amount the bank needed to cover the loan, but she denied having that knowledge.

## 1. New trial

As Jack's and Virginia's claims had been the subjects of summary judgments, the only claims which went to trial were J.W.'s. The jury returned a verdict for J.W. for compensatory damages of $17,000 and $10,000 punitive damages. The judgment was filed May 23, 1988. On June 3, 1988 a motion for judgment notwithstanding the verdict or alternatively a new trial or a reduction in damages was filed by the bank and Harris-McHaney. No basis was asserted for the new trial. The grounds stated for judgment n.o.v. were the "failure to plead and prove facts sufficient to support the case," and the request for reduction in damages was asserted "because the verdict is not based on the facts and is insufficient by the evidence." An amended motion was filed on June 29 which stated the basis for a new trial as "irregularities or defects in the verdict."

On July 21, 1988, an order granting a new trial was entered. The trial court found that the verdict was contrary to the preponderance of the evidence and that the evidence does not support the amount of compensatory damages awarded, even if liability was supportable.

J.W. argues that the court lacked jurisdiction to grant the motion for a new trial. The basis for the argument is that the motion was not ruled on within 30 days of its filing. That is correct. In *Street* v. *Kurzinski*, 290 Ark. 155, 717 S.W.2d 798 (1986), we were presented with a motion for rule on the clerk requiring us to decide which of two notices of appeal was controlling. The appellant sought to overturn the decision of the trial court before a formal judgment had been entered. A second motion for judgment n.o.v. or new trial had been filed and no action was taken on the motion during the 30 days allowed by Ark. R. App. P. 4(c). Consequently, we held, the motion was deemed to have been denied at the expiration of the 30 days after the filing and the court lost jurisdiction to act on the motion. The opinion cited *Smith* v. *Boone*, 284 Ark. 183, 680 S.W.2d 709 (1984), where we held it was mandatory that a written record be made of the trial court's action in either taking the motion under advisement or setting a definite date for the motion to be heard. We also held that the making of the record was mandatory in *Coking Cole* v. *Arkoma Coal Corp.*, 278 Ark. 446, 646 S.W.2d

12 (1983). These cases construed Rule 4 in light of questions of timeliness of the notice of appeal or tender of the record but all support the conclusion that the trial court, by operation of law, loses jurisdiction to rule on a motion for a new trial after the expiration of the 30 days if no written notation is entered either taking the motion under advisement or setting a hearing date.

■ The bank's argument on this point is that it filed an application for stay of judgment and supersedeas "if applicable" on June 15, 1988, in which it mentioned that the post trial motions were pending, and that the granting of the stay order had the effect of taking the new trial motion under advisement. J.W. points out that the only purpose of the stay order was to stay the judgment in the face of a garnishment writ which had been filed. We agree that the staying of a judgment is no more than that and does not have the effect of taking post trial motions under advisement. There was nothing to prevent the trial court from ruling on the post trial motions during the time the judgment was stayed, and there is nothing to prevent the motions from being "deemed denied" as provided in Rule 4(c) during that time. The fact that the motions were mentioned as "pending" was no more than a statement of fact and thus had no effect in this context.

■ The record is very clear that the motion was not ruled on, taken under advisement, or set for a hearing prior to the close of business on July 5, 1988, the day the 30 days expired. Thus the motion was deemed denied, and the order entered on July 21 was void and of no effect. The court erred, and the order granting a new trial is reversed. The judgment based on the jury award is reinstated.

## 2. Outrage and bad faith

The complaints of J.W., Jack, and Virginia pleaded the tort of outrage in connection with the harm to Mavis caused by the assertedly malicious acts of the bank. The definition of the tort was set out in *Counce* v. *M.B.M. Co.*, 266 Ark. 1064, 597 S.W.2d 92 (1980). We adopted the holding of the Massachusetts Supreme Judicial Court in the case of *Agis* v. *Howard Johnson Co.*, 335 N.E.2d 315 (1976), which was derived from *Restatement (Second) of Torts* § 46 (1965).

One who, by extreme and outrageous conduct and without

privilege, causes severe emotional distress to another is subject to liability for such emotional distress even though no bodily harm may result. However, in order for a plaintiff to prevail in a case for liability under this tort, four elements must be established. It must be shown (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, . . . ; (2) that the conduct was 'extreme and outrageous', 'utterly intolerable in a civilized community', . . .; (3) that the actions of the defendant were the cause of the plaintiff's distress, . . . ; and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.' [266 Ark. at 1068, 597 S.W.2d at 94.]

■ Jack, J.W., and Virginia assert that the restatement section cited above permits a cause of action to an immediate family member without the necessity of bodily harm where the actions of the alleged tortfeasor are directed at a third person, in this case their wife and mother. The restatement section supports their assertion that they have standing to sue; however, we have not adopted the language referring to conduct toward third persons contained in the section. Even if the trial court was wrong in granting summary judgment on the standing issue, it was correct in dismissing the claims because the conduct of the appellees in this instance falls far short of extreme and outrageous behavior which is utterly intolerable in a civilized community. The summary judgment motion questions whether the responding party has a claim and is an extension of the motion to dismiss for failure to state a claim. *Joey Brown Interest, Inc.* v. *Merchants Nat'l Bank*, 284 Ark. 418, 683 S.W.2d 601 (1985). While the bank may have been wrong in refusing to honor the CD, the facts, even when viewed from the perspective of Jack, J.W., and Virginia, fail to establish the sort of conduct described in the *Counce* case.

### 3. Breach of contract, bad faith

#### a. The summary judgments

Jack also asserted a claim as a third party beneficiary of the bank's contract with Mavis and that he thus had a cause of action

for breach and bad faith which was established because the bank sold the property for less than the appraised value. There are several reasons the court was correct in granting summary judgment with respect to this claim. Again, Jack did not have a claim to start with, thus there could have been no remaining material issues of fact.

The contract to which Jack's complaint referred was the one between him and Mavis promising him the excess profit from the sale of the house in exchange for the deed to the house. The bank knew that Mavis borrowed the money to lend to Jack but the evidence does not show that the bank knew about the transfer of the house to Mavis and the ancillary agreement. The bank's contract with Mavis was to lend the money with the house as security.

In *Brown* v. *Summerlin Associates, Inc.*, 272 Ark. 298, 614 S.W.2d 227 (1981), we wrote that there is a presumption that parties contract only for the benefit of themselves, and a contract will not be considered as having been made for the use and benefit of a third party unless it clearly appears that such was the intention of the parties. A mere expectation of a benefit is insufficient to rise to the status of an intended beneficiary. The question of what the bank knew about the agreement between Mavis and Jack was not squarely addressed in these proceedings. There was some knowledge of his participation in the deal evidenced by the notation on the original note and the testimony of Reves to the effect that he knew he was dealing with Jack through Mavis in handling the property. There was nothing to show specific knowledge on the part of the bank of the agreement between Jack and Mavis.

### b. The directed verdict

J.W. contends the court should not have directed a verdict against his claim of bad faith with respect to the CD contract with the bank. The tort of bad faith requires a showing of actual malice characterized by hatred, ill will or revenge. *Aetna Casualty and Surety Company* v. *Broadway Arms Corporation*, 281 Ark. 128, 664 S.W.2d 463 (1983). We recently held that the act of the alleged tortfeasor in merely enforcing an agreement with a debtor is not sufficient to support such a claim. *Universal*

*Security Ins. Co.* v. *Ring*, 298 Ark. 582, 769 S.W.2d 750 (1989). Even if the bank's actions in flagging the CD were wrongful, nothing in the evidence presented to the court supported a finding of actual malice, ill will, or revenge on the part of the bank or Harris-McHaney, therefore, the directed verdict on J.W.'s claim of bad faith was proper.

Nor was J.W.'s evidence on his tort of outrage claim any stronger than that of Jack and Virginia; therefore, it too was a proper object of the directed verdict ruling.

We affirm the summary judgments rendered with respect to the claims of Jack Deason and Virginia Kistler. We affirm the directed verdict rendered on J.W. Carden's claims of outrage and bad faith. We reverse the granting of a new trial with respect to the jury verdict for damages on J.W. Carden's claim for conversion of the certificate of deposit.