BANK OF BEARDEN *v.* Delton SIMPSON, Darlene
Simpson, and Gee Owens

91-22                                              808 S.W.2d 341

Supreme Court of Arkansas
Opinion delivered April 29, 1991

*Bridges, Young, Matthews, Holmes & Drake*, by: *David L. Sims*, for appellant.

*Wright, Chaney, & Berry*, by: *Don P. Chaney*, for appellee.

DAVID NEWBERN, Justice. This mortgage foreclosure case presents a question with which we have not previously dealt. If a lender accepts both personalty and realty as collateral for a loan and, upon default, proceeds first against the personalty in a

commercially unreasonable manner, how will the remainder of the debt be calculated and what are the lender's remaining remedies? We hold that if the lender is unable to show that market value or more was obtained for the personalty sold, a rebuttable presumption arises that the remainder of the debt will be the difference between the market value of the personalty which has been sold and the debt owed at the time the personalty was sold. The Bank will be barred from foreclosure on the real estate mortgage or from a deficiency judgment if it is unable to show that the collateral was insufficient to satisfy the debt.

Delton Simpson and his wife, Darlene Simpson, operated a logging business. They refinanced four pieces of logging equipment with the Bank of Bearden resulting in their signing a note to the Bank of $34,111.42. Gee Owens, Darlene Simpson's father, also signed the note. As additional security, a real estate mortgage was made to the Bank by Delton, Darlene, and Leatha Simpson. Due to an illness suffered by Delton Simpson, note payments were not made, and a default occurred.

The Bank sold the logging equipment without giving notice to the Simpsons, and none of the debtors were present at the sales. The items were sold separately, and the monies received were applied by the Bank partially to the refinancing note and partially to another note Delton and Darlene Simpson owed to the Bank. The Bank claimed that $19,028.01 remained due on the refinancing note which was originally for $34,111.42.

The Bank then brought this action to foreclose against the real estate. Delton and Darlene Simpson defended on the basis that the Bank should be allowed no further relief after selling their equipment in a commercially unreasonable manner. They also counter-claimed, alleging bad faith and the tort of outrage. The chancellor denied relief on the Simpsons' counter-claim. He awarded a judgment in favor of the Bank.

In the original order, the Chancellor found that the Bank had failed to comply with the notice requirements of the Uniform Commercial Code upon selling the logging equipment.

The Chancellor's amended order, after reciting the facts, and reaffirming its original order, stated that the Bank could "proceed to collect in accord with . . . [Ark. Code Ann. § 4-9-501

(4)]. . .its remedies, with regard to real property collateral are not governed by the U.C.C. repossession procedures." The order further recited that "the Defendants," naming the Simpsons and Gee Owens, had been properly served,and then it provided:

> that the Defendants are justly indebted to the Plaintiff, Bank of Bearden, in the sum of $10,496.52 as evidenced by portion paid off on land included in total debt, after credit for pro-rata payments, plus interest . . . at the rate of 10.5% per annum, as a result of a Promissory Note. . . .

The order then recited the terms of the real estate mortgage securing the note, after which it stated a total indebtedness figure of $14,665.06 plus costs "to which the Plaintiff [Bank] is entitled to have judgment against the Defendants, with said judgment to bear interest . . . at a rate of 10% per annum, and to have judgment entered, foreclosing the rights of Defendants on the aforesaid Mortgage." That figure represented the amount left unpaid on the note plus interest to date and attorney's fee. It was less than the Bank alleged to be due because the Chancellor credited to the note the total amounts received by the Bank from the sales of the equipment, thus not allowing the Bank to use the proceeds to reduce Delton and Darlene Simpson's other obligations to the Bank.

The order then recited that Gee Owens was a "separate borrower" so far as the U.C.C. provisions applied and as to the subject mortgage. Owens was not a party to the mortgage.

The order winds up by stating, "IT IS ALSO, THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED that the . . . Bank . . . have and recover a judgment In Rem against the land . . . in the amount of $14,665.06 including the attorney's fee with interest from this day at a rate of 10% per annum;. . . ."

The Bank argues that the security agreement specifically provided that the logging equipment was security not only for the refinancing note but for any other obligation of the debtors to the Bank. It is thus contended that the Chancellor erred by refusing to allow the Bank to credit some of the proceeds of the equipment sales to Delton Simpson's other obligations to the Bank. It also argues that the Chancellor erred in calculating interest at 10%

because the Code called for 10.5 % which was the amount sought in the Bank's complaint. The Simpsons and Owens do not directly contest these arguments. They do, however, contest the Bank's argument that it is entitled to personal relief against them in addition to the "in rem" judgment against the land. Their cross-appeal seeks relief from the mortgage foreclosure, claiming that it is based on a deficiency judgment to which the Bank is not entitled because it violated the Uniform Commercial Code when it sold the logging equipment. While it is true that the Simpsons and Owens have not questioned the specific amounts the Bank received upon sale of the logging equipment, they clearly have questioned the commercial reasonableness of the sales, and we regard that as sufficient to raise the issue as to the manner in which the Bank should have proceeded and the extent of any further relief available to it.

For the proposition that a party which has sold collateral in violation of the Uniform Commercial Code is not entitled to a deficiency judgment, the Simpsons and Owens correctly cite *First State Bank of Morrilton* v. *Hallett*, 291 Ark. 37, 722 S.W.2d 555 (1987). In that case, the creditor had not sent the debtor notice of the time and place of the sale of collateral, as required by Ark. Stat. Ann. § 85-9-504(3) (Supp. 1985), the governing section of the Uniform Commercial Code, now codified as Ark. Code Ann. § 4-9-504(3) (1987). This Court held that the violation absolutely barred a deficiency judgment.

A line of cases represented by *Norton* v. *National Bank of Commerce*, 240 Ark. 143, 398 S.W.2d 538 (1966), constructed a presumption that the collateral was worth at least the amount of the debt, thus placing on the creditor the burden of proving the amount which should reasonably have been obtained through a sale conducted according to law and allowing a deficiency judgment for the remaining debt less the amount which could reasonably have been obtained in a sale according to law. That line of cases was thus overruled by the decision in the *Hallett* case absolutely barring a deficiency judgment.

In a plain Uniform Commercial Code case, the *Hallett* rule is simple to apply. The problem with it here is that the remedies of the Bank with respect to the real estate mortgage are not governed by the Code. On one hand it may be argued that no

deficiency occurs until all of the collateral, both personalty and realty, has been disposed of. On the other hand, if the personalty subject to the Code provisions is disposed of first, any remainder of the debt owed which was secured by the personalty could be considered a deficiency. The only provision of the Code purporting to deal with this situation is Ark. Code Ann. § 4-9-501(4) (1987) which provides:

> If the security agreement covers both real and personal property, the secured party may proceed under this part as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property in which case the provisions of this part do not apply.

This section is an apparent attempt by the drafters of the Code to require creditors to proceed either pursuant to the Code or pursuant to the equitable foreclosure laws and avoid any combination. It simply does not succeed in a case like this, and it does not answer the question posed here. The Bank proceeded against the personalty first but did so extrajudicially. It now seeks to foreclose against the real property, but the amount of the debt it claims is established as a result of the sale of the personalty.

It has been suggested that when the action brought is solely to foreclose a real estate mortgage, the Code provisions are disregarded. *See Bank of Chenoa* v. *Bagby*, 467 N.E.2d 596 (Ill. App. 1984). It has also been held that, in a situation like the one before us now, the creditor's commercially unreasonable sale of personalty precludes any action to foreclose a mortgage securing the same debt. *United States* v. *Kennedy*, 256 Ga. 345, 348 S.E.2d 636 (1986).

Neither of these solutions is satisfactory. The real estate mortgage is not governed by Uniform Commercial Code provisions, and there is no reason the Bank should lose altogether the security of the mortgage for having violated the Code with respect to sale of the personalty. However, the sale of the personalty *is* governed by the Code, and the Bank should not be allowed to sell the personalty in violation of the Code and thus establish the amount of the remainder of the debt against the real estate. While that may not technically be the same as collecting the sort of deficiency judgment we outlawed in the *Hallett* case, the effect is

the same, especially if a deficiency judgment were awarded after foreclosure against the real estate. The amount of any such deficiency judgment would be directly affected by the amount received by the lender in the sale of the personalty pledged as collateral for the same loan.

■ The best solution we have found is the one adopted in *Bank of Hawaii* v. *Davis Radio Sales & Service*, 727 P.2d 419 (Haw. App. 1986). It was held that a creditor who had sold personalty collateral in violation of the Code could pursue the remainder of the debt by foreclosing against real property which also served as collateral but that the amount of the remaining debt would be no more than the difference between the reasonable value of the personalty at the time of the sale and amount of the obligation at the time the sale of the personalty occurred.

While this solution is reminiscent of the line of cases represented by *Norton* v. *National Bank of Commerce, supra,* which we overruled in the *Hallett* decision, we should make it clear that we contemplate no reversion to such holdings in garden variety Code cases.

We usually try to decide chancery cases without remanding them if the record permits. We cannot do that here, as the Bank must be given an opportunity to prove what would have been obtained from the sale of the logging equipment had the sale been conducted in accordance with the Code. If the Bank is able to prove that an amount is due on the note, the Chancellor may proceed with the mortgage foreclosure, and we see no reason to bar a personal deficiency judgment against Delton and Darlene Simpson and Leatha Simpson if one would be available under the law governing real estate foreclosures. There can be no deficiency judgment against Gee Owens, as his only obligation was on the note, and the *Hallett* decision bars such a judgment against him.

We cannot tell from the record why the Chancellor provided for post-judgment interest to accrue at 10% rather than the 10.5% specified in the note and sought in the Bank's complaint. *See* Ark. Code Ann. § 16-65-114(a) (1987) which provides that interest on a judgment will be 10% or the amount "provided by the contract, whichever is greater." We will leave that matter open for decision on remand.

■ We affirm the Chancellor's decision denying the Simpsons' and Owens' claims of the tort of outrage and lender liability due to bad faith. These claims, seeking compensatory and punitive damages were based on testimony that the Bank had agreed to hold off collecting on the note until Delton Simpson received a workers' compensation disability payment which he could use to reduce the debt. There was evidence that the Bank was attempting to work out the problem of non-payment with the Simpsons and had even agreed to allow them to sell some of the logging equipment themselves to help pay off the loan. The evidence did not support an allegation of "bad faith" or the tort of outrage.

One of the cases cited as the basis of the counter-claim is *Deason* v. *Farmers & Merchants Bank*, 299 Ark. 167, 771 S.W.2d 749 (1989). Just as in the *Deason* case, we find the evidence here depicting the Bank's conduct as being in bad faith or outrageous falls far short of the conduct contemplated in *Counce* v. *M.B.M. Co.*, 266 Ark. 1064, 597 S.W.2d 92 (1980), in which we recognized the tort.

■ All that remains is the question whether it was proper for the Bank to reduce the amount to be applied to the refinancing note from the proceeds of the sales of the logging equipment by applying a portion of them to the Simpsons' other note. Although the Court's holding on this issue was apparently based on Ark. Code Ann. § 4-9-504(1)(b) (1987), the statute was not mentioned in the Court's order. The issue was raised by the Simpsons and Owens in a post-trial brief. They claimed, as a part of their lender bad faith argument, that it was improper for the Bank not to credit the amount received from the sales fully to the note for which the logging equipment was pledged as collateral. In its responding post-trial brief, the Bank did not specifically address that issue. We can find nothing in the record showing that the Bank argued to the Court that it should have been permitted to apply the sale proceeds to Delton and Darlene Simpson's other note because of language in the refinancing note security agreement permitting it. The argument is raised for the first time on appeal, and we decline to address it. *Helm* v. *Mid-America Indust., Inc.*, 301 Ark. 521, 785 S.W.2d 209 (1990); *Wilson* v. *Wilson*, 270 Ark. 485, 606 S.W.2d 56 (1980).

The decision of the trial Court is affirmed in part and reversed in part on appeal, affirmed in part and reversed in part on cross-appeal, and remanded.

GLAZE, J., concurs.

BROWN, J., concurring in part and dissenting in part.

DUDLEY, J., not participating.

TOM GLAZE, Justice, concurring. This case falls casualty to this court's holding in *First State Bank of Morrilton* v. *Hallett*, 291 Ark. 37, 722 S.W.2d 555 (1987), where, in a 4-3 decision, it held that a secured creditor is not entitled to a deficiency judgment under the Uniform Commercial Code (UCC) when the creditor failed to comply with the Code's procedures for disposition of collateral. Until *Hallett*, the court followed the well-settled rule in *Norton* v. *National Bank of Commerce*, 240 Ark. 143, 398 S.W.2d 538 (1966), which provided that, if a secured creditor fails to comply with UCC notice requirements when disposing of a debtor's collateral, the presumption is that the collateral is worth at least the amount of the debt, and the creditor has the burden of proving the amount that should reasonably have been obtained through a sale conducted according to law. *Hallett*, 291 Ark. at 42, 722 S.W.2d at 555; *see also* Glaze, J., dissenting, 291 Ark. at 42, 722 S.W.2d at 557.

The present case is another Code case where the secured creditor, the Bank of Bearden, failed to comply with Code requirements. Thus, if this court followed the new "no notice-no deficiency" rule adopted in *Hallett*, it would conclude this case by affirming the trial court's holding that the Bank of Bearden is entitled to no relief. In fact, the majority cites *United States* v. *Kennedy*, 256 Ga. 345, 348 S.E.2d 636 (1986), where the Georgia Supreme Court precluded a creditor's foreclosure action to foreclose on a mortgage securing the debtors' loans because the creditor had previously failed to meet Code requirements when selling personalty that secured the same loans.

Instead of following the rationale and holding in *Kennedy*, the majority court here attempts to distinguish *Hallett* solely on the basis that the debtors' real property was also used to secure the indebtedness owed the Bank of Bearden. In other words, the court suggests that, while the Bank is absolutely barred from

obtaining a deficiency judgment under the UCC because it violated Code requirements, it may still obtain a deficiency judgment if the Bank is shown to have actually received the fair market value from its "Code-violated" sale of the debtors' personalty. If the Bank offers such proof and the amount received remains less than the debtors' obligation, the Bank, the majority court says, can collect the remaining deficiency by foreclosing on the debtors' real property.

In my view, this court has gone full circle, adopting the same type rationale the court had previously followed for twenty years in *Norton*. In fact, the majority cites and relies on the case of *Bank of Hawaii* v. *Davis Radio Sales & Service, Inc.*, 727 P.2d 419 (Haw. Ct. App. 1986), where that court, quoting from *Liberty Bank* v. *Honolulu Providoring, Inc.*, 650 P.2d 576 (Haw. 1982), said the following:

> We therefore adopt the "rebuttable presumption" rule in this jurisdiction. If the secured creditor fails to comply with notification requirements or disposes of a collateral other than in a commercially reasonable manner, the secured creditor will have the burden of rebutting the presumption that the fair market value of the collateral equals the unpaid balance of the outstanding debt. In proving the fair market value of the collateral, the secured creditor who fails to comply with the requirements of the Code may not rely solely on the value received on resale, but must prove the value of the collateral by other evidence. Moreover, to the extent that the debtor is harmed by the secured creditor's failure to comply with proper notification and commercial reasonableness requirements, the debtor will be entitled under HRS § 490:9-507(1) to have the amount of damages sustained set-off against any deficiency the secured creditor would otherwise recover.

As can be readily seen, Hawaii, like many other states, follows the "rebuttable presumption" rule which is the same rule (the *Norton* rule) our court rejected in *Hallett*. This court made a mistake in *Hallett*, and it should now reinstate the *Norton* rule. Certainly, it would make the present case much easier to understand and to resolve.

Under the rebuttable presumption rule, the debtors here

were entitled to the presumption that the amount due on their debt had been received by the Bank. However, if the Bank of Bearden can show that it had sold the debtors' personalty for its fair market value and that the sale amount was still less than the debt owed, the Bank would be entitled to a deficiency judgment. The Bank would then be entitled to foreclose against the debtors' real property in order to satisfy deficiency still owed on the original debt. Of course, if the Bank of Bearden failed in its proof, it would be barred from proceeding against the debtors' real property since no deficiency amount would be shown to exist.

Instead of readopting the "rebuttable presumption" rule and being done with it, the majority opinion retains the "no notice-no deficiency" rule in Code cases involving only personalty, but adopts the "rebuttable presumption" rule when dealing with secured transactions involving both personal property and real property. In doing so, I believe that the underlying rationale for its decision is extremely confusing.[1] For the sake of clarity, I believe the court should either adhere to its decision in *Hallett* and uphold the trial court's decision finding that the Bank is not entitled to any further relief, or reinstate the *Norton* or rebuttable presumption rule in personalty or both personalty and realty secured transactions, thus, requiring remand of this cause for the trial court to determine if the Bank's sale of the debtors' property was for its fair market value. Instead, the majority adopts another or third position which adopts the "rebuttable presumption" rule but such rule is operative only in cases where both personalty and real property secure a borrower's loan and the lender first proceeds against the personalty when a default occurs. I simply fail to understand why the majority chose to retain the "no notice-no deficiency" rule in one circumstance (where personalty only is involved) but apply the "rebuttable presumption" rule in another (where both personalty and realty are involved). Nevertheless, because the majority's new rule sounds and looks much like Arkansas's earlier "rebuttable presumption" or *Norton* rule, which this court overruled with me dissenting, I find myself joining in the result reached by the court.

---

[1] The practical result, I suspect, will be that, hereafter, lenders will avoid all this confusion and possible pitfalls by first foreclosing on real property before exercising their rights against personalty under the Code.

ROBERT L. BROWN, Justice, concurring in part; dissenting in part. I dissent from the majority's conclusion that the issue of the value received from the sale of the logging equipment must be remanded to the trial court for determination.

First, the majority has rushed to consider an issue of first impression in this state, but fails to recognize that the issue was not raised by the Simpsons before the trial court. It is all but axiomatic that we, as an appellate court, do not consider issues where the trial court has not had an opportunity to decide them first. *See, e.g., Horne Brothers, Inc. v. Ray Lewis Corp.*, 292 Ark. 477, 731 S.W.2d 190 (1987). The Simpsons did not question the amount received from the sale of their equipment at the trial, even after the Bank's loan officer testified that a fair price was realized. Rather, they attacked the failure of the Bank to give notice under the Uniform Commercial Code which we have held absolutely bars collection of a deficiency amount after the sale of the *personal property* securing the note. *See Walker v. Grant County Savings and Loan Ass'n*, 304 Ark. 571, 803 S.W.2d 913 (1991); *First State Bank of Morrilton v. Hallett*, 291 Ark. 37, 722 S.W.2d 555 (1987). Attacking the notice provisions is not the same as arguing that the actual sale resulted in unfair prices, as the majority now suggests.

Secondly, the Simpsons did not ask for the relief fashioned by the majority opinion. The Simpsons asked for an absolute bar against a real estate foreclosure because the Bank had failed to comply with the notice requirements of the Commercial Code. In effect, the Simpsons asked for an extension of our decisions barring deficiency judgments after sales of personalty under the Commercial Code to real estate foreclosures where the real estate secures the same note. Hence, the majority has granted relief to the Simpsons which was never requested by them or contemplated by the trial court.

Thirdly, though the majority's opinion acknowledges that the Commercial Code does not apply to real property remedies [Ark. Code. Ann. § 4-9-501(4) (1987)], it then applies a Commercial Code remedy to real estate foreclosures. The majority does admit that the rebuttable presumption remedy is one that we previously applied to notice violations under the Commercial Code prior to our adoption of the absolute bar under *First State*

*Bank of Morrilton* v. *Hallett, supra.* Now it resurrects that Commercial Code remedy and applies it to foreclosures in equity.

Fourthly, the record in this case is absolutely devoid of any evidence suggesting that fair market value was not received from the Bank's sale of the logging equipment. The majority, however, remands the case for still another hearing and applies a theory that "presumes" that fair market value was not obtained.

Fifthly, by applying a different Commercial Code remedy to real estate collateral (rebuttable presumption) as opposed to personalty collateral (absolute bar), we are confusing this area of the law to the extent that it has become well-nigh unintelligible. Assuming we should apply Commercial Code remedies to real estate foreclosures, which I do not countenance, there is an inconsistency in the majority's application where the security is personal property and land. A better result would be to allow the trial judge to consider the matter of value and the appropriate amount left to be collected against real estate through foreclosure than for this court to apply Commercial Code concepts to equitable foreclosures.

Other jurisdictions have allowed a foreclosure against land to proceed where the trial court has made a finding that fair market value was in fact realized from the sale of personalty. *See, e.g., Siltzer* v. *North First Bank*, 445 So. 2d 649 (Fla. App. 1984). Having the lower court make this determination, after value is placed in issue by the debtor, seems infinitely preferable to this court's mandate of a rebuttable presumption hearing.

But, again, the issue of fair market value is not appropriately before us and should not be considered on appeal. The Simpsons had ample opportunity to question the value received from the UCC sales, especially when the trial court specifically scrutinized the amount to be collected by the foreclosure and reduced that amount because of the Bank's misapplication of sale proceeds. Yet they remained silent.

By the majority's decision today we are giving financial institutions, holding both realty and personalty as security for a note, an incentive to foreclose on a debtor's homestead first. By doing so they avoid the rebuttable presumption hearing, after the sale of personalty, which has now been fixed in place by this court.

Public policy considerations alone should militate against that incentive.

I would affirm the trial court's order finding that the Uniform Commercial Code does not govern real estate foreclosures.