**WEST DES MOINES STATE BANK, Appellee,**

v.

**RALPH'S DISTRIBUTING COMPANY, Appellant,**

and

**Mercury Marine Brunswick Corp., Defendant.**

No. 91–1948.

Supreme Court of Iowa.

May 25, 1994.

Lawrence L. Marcucci of Shearer, Templer, Pingel & Kaplan, P.C., West Des Moines, for appellant.

Robert G. Allbee, Wade R. Hauser, III, and Michael J. Eason of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ. ·

LARSON, Justice.

West Des Moines State Bank financed a boat wholesaler called Ralph's Distributing Company (Ralph's) and took a real estate mortgage as part of its security. The bank obtained a decree of foreclosure, and Ralph's appealed. We affirm.

This is a companion opinion to *Engstrand v. West Des Moines State Bank,* 516 N.W.2d 797 (Iowa 1994), which is also filed today. The facts leading up to the bank's foreclosure are set out in that opinion and need not be repeated in detail here.

The defendant challenges the decree on three grounds: (1) the bank was not entitled to foreclose because the defendant was not in default, (2) the bank did not dispose of the defendant's collateral in a commercially reasonable manner under Iowa Code section 554.9504 (1987), and (3) the bank acted with "unclean hands." Our review in this equity case is de novo.

I. *The Default.*

The defendant contends that the bank did not establish that it was in default. The loan agreement defined the circumstances that would be considered by the bank to be acts of default. There was evidence that the borrower was indebted approximately $900,-000 to a floor plan creditor, that it was engaged in check kiting, and that it had defaulted by missing a note payment to the bank. Under the loan agreement, default on any of the notes by any of the principals, including Ralph's or its associated corporations, would be considered to be a default on the loan agreement and would entitle the

bank to foreclose its mortgage. We agree that the loan was in default for foreclosure purposes.

## II. *The Deficiency Judgment.*

■ Ralph's also contends that the bank is not entitled to foreclose its mortgage because the bank had failed to dispose of its collateral in a commercially reasonable manner, Iowa Code § 554.9504 (1987), and therefore lost any right to a deficiency judgment.

We have held that a failure to dispose of collateral in a commercially reasonable manner may deprive the secured party of a deficiency judgment. *See Barnhouse v. Hawkeye State Bank,* 406 N.W.2d 181, 186 (Iowa 1987); *John Deery Motors, Inc. v. Steinbronn,* 383 N.W.2d 553, 555 (Iowa 1986); *Rock Rapids State Bank v. Gray,* 366 N.W.2d 570, 574 (Iowa 1985).

Ralph's contends that the liquidation was not commercially reasonable because the amount paid by the bank as expenses of liquidation were grossly excessive. There would be no remaining debt to be secured by the mortgage, therefore, and the bank would have no right to foreclose the mortgage, according to its argument.

Support for this argument is found in *Bank of Bearden v. Simpson,* 305 Ark. 326, 808 S.W.2d 341 (1991). In the *Bearden* case, the secured party failed to notify the debtors of its intent to dispose of its collateral. The court concluded that the creditor who had sold collateral in violation of the Uniform Commercial Code would lose the right to foreclose its mortgage. The court stated:

> This mortgage foreclosure case presents a question with which we have not previously dealt. If a lender accepts both personalty and realty as collateral for a loan and, upon default, proceeds first against the personalty in a commercially unreasonable manner, how will the remainder of the debt be calculated and what are the lender's remaining remedies? We hold that if the lender is unable to show that market value or more was obtained for the personalty sold, a rebuttable presumption arises that the remainder of the debt will be the difference between the market value of the personalty which has been sold and the debt owed at the time the personalty was sold. The bank will be barred from foreclosure on the real estate mortgage or from a deficiency judgment if it is unable to show that the collateral was insufficient to satisfy the debt.

*Bank of Bearden,* 305 Ark. at 326–27, 808 S.W.2d at 342.

The Uniform Commercial Code does not specifically provide that a secured party failing to abide by the rules of the Code will lose its right to a deficiency judgment. There are in fact two lines of authority. One creates a rebuttable presumption that the value of the collateral was equal to the amount of remaining indebtedness. The other, followed by Iowa, creates an irrebuttable presumption that at least in certain cases the value of the collateral will be presumed to equal the amount of remaining debt. *See Barnhouse,* 406 N.W.2d at 186 (discusses both views).

In the present case, the district court reduced the amount of judgment entered against the defendant by $137,000, which it concluded was the amount of the excessive costs in connection with the liquidation. When a debtor obtains another remedy, we believe that denial of any right to a deficiency judgment is not warranted. Reduction of the bank's judgment by the amount of the excessive liquidation costs was a proper remedy here.

This case must be distinguished from the Arkansas case quoted above because, in that case, the violation of the UCC was more egregious. The debtor had not received notice of a proposed disposition. That is not the case here; this debtor was advised at all stages of the disposition proceeding.

In *Barnhouse,* we made it clear that those cases that had denied the right to deficiency judgment were those in which no notice had been given. We said there

> Iowa has adopted and consistently applied the first sanction [denial of deficiency judgment] for failing to give notice, thus barring any recovery beyond that obtained through the sale of the security property.

*Barnhouse,* 406 N.W.2d at 186.

In this case, the remedy fashioned by the district court was adequate to cure the prob-

lem, and we decline to adopt a rule that would deny a deficiency judgment under these circumstances. Accordingly, we affirm.

**AFFIRMED.**