Ralph A. ENGSTRAND, Leola M. Engstrand, Mark A. Engstrand, Michael C. Engstrand, and Ralph's Distributing Co., Appellants,

v.

**WEST DES MOINES STATE BANK and Boats Unlimited, Appellees.**

No. 91–1378.

Supreme Court of Iowa.

May 25, 1994.

Lawrence L. Marcucci of Shearer, Templer, Pingel & Kaplan, P.C., West Des Moines, for appellants.

Robert G. Allbee, Wade R. Hauser III, and Michael J. Eason of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellee West Des Moines State Bank.

David L. Charles of Gamble & Davis, Des Moines, for appellee Boats Unlimited.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

LARSON, Justice.

Ralph Engstrand and several members of his family owned wholesale and retail boat companies, which were financed by West Des Moines State Bank. When the companies defaulted on the loan, the bank began collection proceedings, including the liquidation of the companies' inventory.

The plaintiffs filed this suit against the bank and Boats Unlimited (the corporation set up to conduct the liquidation) alleging negligence in the disposition of the collateral and breach of a fiduciary duty by the bank. The court granted a directed verdict in favor of Boats Unlimited, but a jury returned substantial verdicts against the bank. The court entered a judgment notwithstanding that verdict, and the plaintiffs appealed. We affirm.

The Engstrand family owned a wholesale boat company in Ankeny called Ralph's Distributing Company (Ralph's). Ralph, Mark, and Michael Engstrand were the sole shareholders in Ralph's. Ralph's expanded into the retail business by opening a Des Moines store called Des Moines Boating Center (DMBC), a wholly owned subsidiary of Ralph's. A second retail operation, called Boatland, was opened in Lincoln, Nebraska. Boatland was also owned solely by Ralph's.

Because of a combination of adverse factors, the businesses fell on hard times, and in 1988 the companies showed a loss of $600,-000. In December 1988, the two retail establishments, DMBC and Boatland, filed bankruptcy under chapter 11. The cases were subsequently ordered into chapter 7 liquidations by the bankruptcy court, and various creditors began to scramble to claim their collateral.

The retail buildings and grounds were packed with inventory, including boats and boating accessories. Many secured creditors attempted to pick up their collateral from the premises. In the meantime, the defendant bank began to dictate the disposition of the collateral in which it had a security interest.

In July 1989, this suit was filed against West Bank and Boats Unlimited. The plaintiffs alleged that West Bank was negligent in its lending relationship with the plaintiffs, negligent in failing to allow the plaintiffs an active role in the liquidation, and negligent in failing to dispose of the collateral in a commercially reasonable manner. *See* Iowa Code § 554.9504 (1987). The plaintiffs also alleged that the bank breached a fiduciary duty to the plaintiffs.

The issues on appeal in this case are whether the court erred in ruling as a matter of law that the bank did not owe a fiduciary duty to the plaintiffs and ruling that neither the bank nor Boats Unlimited owed a "special duty" to the plaintiff shareholders to allow them to sue for alleged wrongs committed against the corporations. *See Cunningham v. Kartridg Pak Co.*, 332 N.W.2d 881, 883 (Iowa 1983). The issue in a companion appeal is whether the bank properly foreclosed a real estate mortgage given as additional security. That opinion, *West Des Moines State Bank v. Ralph's Distrib. Co.*, 516 N.W.2d 801 (Iowa 1994), is also filed today.

I. *The Fiduciary Relationship Issue.*

The nature of a two-party relationship may be enough in itself to create a fiduciary duty. For example, a fiduciary duty arises between attorneys and clients, guardians and wards, and principals and agents. *Kurth v. Van Horn*, 380 N.W.2d

693, 696 (Iowa 1986). This, however, is not true as to a bank's relationship with its customers, whether they are borrowers or depositors. The banking-customer relationship does not automatically create a fiduciary duty. *Id.*

■ Here, the bank agreed to make a loan on certain conditions, and the plaintiffs agreed to accept the loan with those conditions. The bank was acting on its own behalf and not on behalf of the plaintiffs in a confidential or trust relationship.

There was no evidence that the bank was acting as an advisor to the plaintiffs or that it exercised any influence over the plaintiffs' business except to enforce its loan agreement.

Viewing the evidence in the light most favorable to the verdict, we agree that it is not sufficient to create a fiduciary relationship, and the court correctly directed a verdict on this issue.

II. *The Special Duty Issue.*

■ The district court ruled as a matter of law that the defendants owed to the plaintiffs no "special duty" that would permit a direct suit as shareholders. On that basis, the court granted a judgment notwithstanding the verdict in favor of the defendants.

■ In reviewing a judgment notwithstanding the verdict, we view the evidence in the light most favorable to the party against whom the motion is directed. *Johnson v. Dodgen,* 451 N.W.2d 168, 171 (Iowa 1990). The motion should be denied when there is any substantial evidence to support the jury's verdict. *Id.*

The Engstrands were shareholders in Ralph's, which was, in turn, the sole shareholder of the retail businesses known as Des Moines Boating and Boatland. Thus, all claims by these plaintiffs are as shareholders, either in Ralph's or through Ralph's' ownership of the shares in the retail outlets. All of the plaintiffs' claims arise out of wrongs allegedly committed against the corporations. They claim that they may pursue these claims in their own right because the defendants owed them a "special duty" because the bank had agreed that the plaintiffs would

be actively involved in the liquidation of their assets and because they had personally guaranteed the corporations' indebtedness.

We have recognized that,

[a]s a matter of general corporate law, shareholders have no claim for injuries to their corporations by third parties unless within the context of a derivative action.

There is, however, a well-recognized exception to the general rule: a shareholder has an individual cause of action if the harm to the corporation also damaged the shareholder in his capacity as an individual rather than as a shareholder....

... [T]he test is best stated in the disjunctive: in order to bring an individual cause of action for direct injuries a shareholder must show that the third-party owed him a special duty *or* that he suffered an injury separate and distinct from that suffered by the other shareholders.

*Cunningham,* 332 N.W.2d at 883 (citations omitted); *accord* 12B William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 5911, at 484 (perm. ed. rev. vol. 1993) [hereinafter Fletcher]; 19 Am. Jur.2d *Corporations* § 2246, at 148–49 (1986); 18 C.J.S. *Corporations* § 398, at 735–36 (1990).

As one court has noted,

[t]here are several well-founded reasons why a stockholder is precluded from asserting a personal right of action against a third party whose actions have caused damage to the corporation. In such a case, it is the corporation that has suffered direct injury, and any damage resulting to the stockholder is merely indirect; such damage is normally reflected only in the decreased value of his stock. In addition, however, the rule requiring that such a claim be pursued on behalf of the corporation and for its benefit prevents a multiplicity of suits by the various stockholders and assures that the corporation will be bound by the result of the litigation. Finally, by requiring the suit to be maintained for the corporation's benefit, any proceeds resulting from the litigation will be treated as corporate assets and avail-

able to satisfy both creditors' and other stockholders' claims.

*Nicholson v. Ash,* 800 P.2d 1352, 1356 (Colo. App.1990); *accord* Fletcher § 5910, at 481.

In *Weiss v. Northwest Acceptance Corp.,* 274 Or. 343, 546 P.2d 1065 (1976), the plaintiff was the former president of a bankrupt corporation. He had also signed a guaranty to secure financing for the corporation. He sued the lender, claiming a special duty, based upon that guaranty.

The court in *Weiss* rejected this argument, stating that

> Weiss was not induced by [the bank] to enter into any new and separate relationship. Plaintiff Weiss guaranteed the debts of [the corporation] long before any alleged fraud was perpetrated by [the bank]. Weiss' guaranties were in no way induced by or in consideration for any misrepresentations or broken promises by [the bank]. Any injury Weiss suffered was in no way separate and distinct from any loss suffered by [the corporation].
>
> Weiss is in no different position than any other creditor of [the corporation]. Weiss gave credit to [the corporation] in the form of making a guaranty to the bank and to others. His action is similar to that of the bank or others in lending credit to [the corporation]. When, after the credit is extended, the value of the assets of [the corporation] are lessened allegedly by the fraud of [the bank] and, therefore, [the corporation] is unable to pay its creditors, the bank and other creditors cannot maintain separate actions against [the bank]. The right of recovery is solely that of [the corporation]. That is true of Weiss as well as other creditors.

*Weiss,* 546 P.2d at 1070.

In the present case, as in *Weiss,* the liquidation of the corporations' assets, claimed as the basis for the lawsuit, occurred after the guaranty agreement was executed.

In *Johnston v. Oregon Bank,* 285 Or. 423, 591 P.2d 746, 748 (1979), the Oregon court again denied a guarantor special duty status based on the fact that he was a guarantor of the corporate debt. The court stated:

> The damages would have occurred to plaintiff just the same in the absence of any guaranty.... Plaintiff's injury either was derivative through his interest in the lumber company or was the result of business relations with others for the lumber company's benefit. It was not the result of his guaranty to the bank.

*Johnston,* 591 P.2d at 748.

The court in *Nicholson* also rejected an argument for a special duty based upon the shareholder's guaranty of a corporate obligation. *Nicholson,* 800 P.2d at 1356.

As one authority has noted,

> [a]ny other rule might result in as many suits against the wrongdoer as there were shareholders in the corporation. If damages to a shareholder result indirectly, as the result of an injury to the corporation, and not directly, the shareholder cannot sue as an individual.

Fletcher § 5911, at 484.

The Engstrands raised a similar "special duty" argument in a federal suit against one of their boat suppliers. A summary judgment in favor of the defendant was affirmed by the eighth circuit on the ground that a special duty was not established. *Ralph's Distrib. Co. v. Bayliner Marine Corp.,* 987 F.2d 505, 507 (8th Cir.1993).

In this case, the suit was not on the guaranty agreement itself. While the wrong complained of, the alleged unreasonable disposition of the collateral, indirectly affected these plaintiffs, it was a wrong against the corporation.

Because the evidence, even when viewed in the light most favorable to the plaintiffs, fails to establish a special duty so as to permit this action on behalf of the shareholders, the court properly entered the judgment notwithstanding the verdict. This disposition makes it unnecessary to address any of the additional issues raised by the parties.

**AFFIRMED.**