**CITY NATIONAL BANK OF FORT SMITH, ARKANSAS, Appellant,**

v.

**UNIQUE STRUCTURES, INC.; Susie Arnall, Appellees.**

No. 94–2085.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1994.

Decided March 10, 1995.

Michael Keith Redd, Fort Smith, AR, argued for appellant.

Fred E. Stoops, Tulsa, OK, argued for appellees (Fred Stoops and Dana C. Bowen, on the brief).

Before MAGILL and BEAM, Circuit Judges, SHANAHAN,* District Judge.

BEAM, Circuit Judge.

City National Bank (CNB) appeals an adverse ruling by the district court on its claim for deficiency judgments on twenty-seven consumer installment contracts. The installment agreements had been purchased from Unique Structures, Inc. (Unique) "with recourse" and were personally guaranteed by Susie Arnall. When the individual debtors defaulted, CNB repossessed and sold the mobile homes held as collateral on the installment contracts, then sued Unique and Arnall to recover the deficiencies. The district court found that CNB had failed to prove the commercial reasonableness of the mobile home sales and denied CNB's claim. Because we agree that CNB has failed to carry its burden of proof, we affirm.

* THE HONORABLE THOMAS M. SHANAHAN, United States District Judge for the District of Nebraska, sitting by designation.

## I. BACKGROUND

Unique is an Oklahoma corporation which was engaged in the retail sale of mobile homes. Susie Arnall operated the business. In March 1987, Unique entered into a "dealer agreement" with CNB. Pursuant to the agreement, CNB purchased certain mobile home installment contracts from Unique. The installment contracts were purchased "with recourse," meaning that Unique assumed liability for payment in the event of default by the consumer. In a separate document, Arnall personally guaranteed Unique's liability on the contracts.

A large number of the contracts purchased by CNB have gone into default. In a previous action, the parties litigated the liability of Unique and Arnall on fifty-eight defaulted installment contracts. We affirmed a $710,-000 jury verdict in favor of CNB. *City Nat'l Bank v. Unique Structures, Inc.*, 929 F.2d 1308 (8th Cir.1991). Since that time, more of the contracts have gone bad, and the liability of Unique and Arnall is once again in dispute.

The present action involves twenty-seven [1] installment contracts, each of which was collateralized by a mobile home. Following default by the purchasers, CNB exercised its option under the dealer agreement to repossess and sell the respective mobile homes. By the time of sale, however, many of the mobile homes were in very poor condition. Appliances and fixtures were missing, windows were broken, and freeze damage had been incurred. As a result, the repossession sales fell far short of satisfying the balance due on the contracts. CNB demanded that Unique and Arnall pay the balance. When they refused, CNB filed this diversity action in federal district court, seeking a deficiency judgment of $431,683.48.

CNB's claim was tried to the court. The parties stipulated that the only issue for trial was whether, under Arkansas law, CNB sold the mobile homes in a commercially reason-able manner.[2] The district court found that it was reasonable for CNB to have sold the mobile homes by private sale on a cash-only basis. It also found that Unique, Arnall, and the individual debtors had been sent adequate and timely notice of the sales. However, the court looked less favorably on the other aspects of the sales.

In particular, the district court found that CNB had failed to repossess and dispose of the mobile homes in a timely manner and had failed to adequately protect and preserve the mobile homes prior to sale. The court interpreted Arkansas law as imposing a duty on CNB to preserve the mobile homes from the time of default (after which CNB had the right to repossess the mobile homes) until the time of sale. By allowing the mobile homes to stand unprotected on the debtors' property, the court found, CNB had contributed to the rapid decline in value of the mobile homes.

The district court also found that CNB had not cleaned or repaired any of the units prior to sale and had not pursued any insurance claims for damage to the units. Finally, the court found the low sale prices of the mobile homes to be additional evidence of unreasonableness. Many of the units were sold for less than their appraised value, and more than half of the sales netted less than the past due interest on the respective installment contracts.

Based on the above, the district court concluded that CNB had not established that the twenty-seven sales were commercially reasonable and denied CNB's claim. CNB appeals.

## II. DISCUSSION

 Under Article Nine of the Uniform Commercial Code (as enacted in Arkansas), a secured party is entitled to "sell, lease, or otherwise dispose of" collateral after default by the debtor, but "every aspect of the dispo-

---

1. A total of thirty-three defaulted installment contracts were before the district court. On six of these contracts, CNB did not repossess the mobile homes, but simply sued to enforce the liability of Unique and Arnall under the dealer agreement. The district court found that Unique and Arnall were liable on the six contracts and entered judgment in favor of CNB for $139,-

601.57. That portion of the court's order is not challenged on appeal.

2. The parties and the court agreed that all other issues had been litigated in the previous action between the parties.

sition ... must be commercially reasonable." Ark.Code Ann. § 4–9–504. If the disposition of collateral is not conducted in a commercially reasonable manner, the creditor is not entitled to a deficiency judgment. *See First State Bank v. Hallett,* 291 Ark. 37, 722 S.W.2d 555, 557 (1987).[3] "When the secured party's handling of the disposition is attacked for want of commercial reasonableness, [the secured party] then has the burden of proving it complied with the provisions of Part Five [of Article Nine]." *Thrower v. Union Lincoln–Mercury, Inc.,* 282 Ark. 585, 670 S.W.2d 430, 432 (1984); *Holiman v. Hagan's Motors, Inc.,* 32 Ark.App. 62, 796 S.W.2d 356, 358 (1990).[4]

The district court denied CNB's deficiency claim because CNB had not established that the mobile home sales were commercially reasonable. In Arkansas, whether the sales were commercially reasonable is a question of fact. *Womack v. First State Bank,* 21 Ark.App. 33, 728 S.W.2d 194, 197 (1987). We review such findings of fact for clear error. Fed.R.Civ.P. 52(a). To the extent the district court was required to interpret state law in defining a "commercially reasonable" sale, however, we review the court's interpretation de novo giving no def-

erence to the district court. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991).

CNB attacks the district court's finding on a number of grounds. First, CNB contends that it did not have an affirmative duty to protect the mobile homes prior to the time it actually took control of them. In addition, CNB argues that the district court erred by considering all twenty-seven sales as a group, rather than individually. Finally, CNB asserts it was error for the district court to consider evidence that CNB did not clean or repair the mobile homes prior to sale and did not pursue potential insurance claims for damage to the homes.

Certain of CNB's contentions are valid. CNB did not have a duty to preserve the mobile homes immediately upon the default of the individual debtors. This duty to preserve arose only after the mobile homes were in CNB's possession.[5] In addition, it is not clear that the district court considered each sale of collateral individually, as we believe it should have.[6] Nonetheless, we cannot say that the district court's finding is clearly erroneous. Based on the record before us,

---

**3.** We note that there has been some uncertainty in this area of Arkansas law. Prior to 1987, the Arkansas courts presumed that a creditor who failed to dispose of collateral in a commercially reasonable manner was not entitled to a deficiency judgment, but allowed the creditor to rebut this presumption with evidence that a true deficiency existed. *See Norton v. Nat'l Bank of Commerce,* 240 Ark. 143, 398 S.W.2d 538, 542 (1966). In 1987, the Arkansas Supreme Court decided *Hallett,* 722 S.W.2d at 556–57, and adopted the "absolute bar rule." Under this rule, a creditor who fails to dispose of collateral in a commercially reasonable manner is barred from obtaining a deficiency judgment. *Id.* Three years later, the Arkansas Court of Appeals interpreted *Hallett* to apply only in cases involving improper notice of sale and applied the *Norton* presumption rule to a case involving an allegedly improper method of sale. *Cheshire v. Walt Bennett Ford, Inc.,* 31 Ark.App. 90, 788 S.W.2d 490, 492–93 (1990). Since *Cheshire,* however, the Arkansas Supreme Court has explicitly stated that *Hallett* overruled the *Norton* line of cases. *Bank of Bearden v. Simpson,* 305 Ark. 326, 808 S.W.2d 341, 343 (1991). Dicta in *Simpson* confirms that the absolute bar rule applies generally to collateral sales in violation of the Uniform Commercial Code. *Id.*

**4.** The debtor may be required to prove a lack of commercial reasonableness when the debtor initiates an action for damages allegedly resulting from an unreasonable sale. *See Becknell v. Quinn,* 592 F.Supp. 102, 114 (E.D.Ark.1983), *aff'd,* 740 F.2d 609 (8th Cir.1984) (per curiam).

**5.** Pursuant to Ark.Ann.Code § 4–9–207(1), "A secured party must use reasonable care in the custody and preservation of collateral in his possession." Contrary to the holding of the district court, "possession" requires more than the bare right to repossess the collateral. Possession involves some level of physical control over the collateral. *See* UCC § 9–207 cmt. 1 (characterizing the secured party's duty as "the duty to preserve collateral imposed on a pledgee at common law.").

**6.** The district court's memorandum opinion does not make clear whether it considered each sale individually or whether it considered all twenty-seven sales as a group. The court should have considered each sale individually. Under the circumstances of this case, the time, manner, place, and terms of any one sale do not make any of the other sales more or less reasonable.

**1334**

we agree that CNB failed to carry its burden of proof.

At trial, CNB relied solely on the testimony of its senior vice president, Michael Fisher. Fisher testified regarding the "normal procedures" followed by CNB in repossessing and selling mobile homes. His testimony was supported by the twenty-seven installment contracts and certain other loan documents. However, the record contains no evidence regarding when CNB actually took control of the mobile homes or the condition of the homes when CNB took control. There is no evidence that CNB made any effort to protect the mobile homes even after gaining control. Without such evidence, the district court could not properly evaluate whether CNB preserved the collateral after gaining control, whether CNB disposed of the mobile homes in a timely manner, or whether CNB should have cleaned and repaired the homes prior to sale. The district court did not clearly err in finding that CNB failed to prove that any of the sales were commercially reasonable.

Alternatively, CNB argues that the jury verdict in the previous case between these parties bars relitigation of the commercial reasonableness issue. This argument is without merit. The jury in the previous case did not consider any of the twenty-seven sales at issue in this case. Thus, the twenty-seven sales were not "actually litigated" in the prior case and their litigation in this case is not precluded. *See* Restatement (Second) of Judgments § 27 (1980).

### III. CONCLUSION

For the foregoing reasons, the order of the district court denying CNB's claim for a $431,683.48 deficiency judgment is affirmed.